United States District Court
Southern District of Texas

**ENTERED**

May 12, 2016

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| B CHOICE LIMITED, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. H-14-2096 |
| | § | |
| EPICENTRE DEVELOPMENT | § | |
| ASSOCIATES LLC, et al., | § | |
| | § | |
| Defendants. | § | |
| | § | |

## MEMORANDUM, RECOMMENDATION and ORDER

Pending before the court[1] are Defendants Epicentre, Frattini, Guiduzzi, PLG Consulting, and F&G Consultancy, Ltd.'s, Motions to Dismiss (Docs. 157, 158, 159, 160, 161,188), Plaintiff's Motion for Partial Summary Judgment (Doc. 166), and Plaintiff and Frattini's Motions for Sanctions (Docs. 191, 194).  The court has considered the motions, the responses thereto, all other relevant filings, and the applicable law.  For the reasons set forth below, the court **RECOMMENDS** that Frattini's Rule 12(b)(2) motion be **DENIED**, Defendants' Rule 12(b)(6) motions be **GRANTED IN PART** and **DENIED IN PART**, and **ORDERS** that the motions for sanctions be **DENIED**.

## I.  Case Background

Plaintiff B Choice Ltd. ("Plaintiff"), brought this action against multiple defendants, alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), as well as

---

[1]    This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72.  Doc. 7.

claims for fraud, breach of fiduciary duty, and breach of contract arising out of its participation in the attempted purchase and planned development of approximately 104 acres of land, the former site of the "AstroWorld" theme park.

## A.  **Factual Allegations**

The following factual account is derived from Plaintiff's live complaint, except where expressly noted.

Plaintiff was incorporated under the laws of England and Wales with its principal place of business in England.[2]  In or around June 2008, Defendants Botero, Delaney, and Iragorri, all citizens of Florida, began promoting a purchase-and-development project entitled "EpiCentre Houston," a mixed-use residential and commercial project to be built on the former site of AstroWorld.[3]

Seeking capital investment for the project, several individual defendants contacted Defendant Guiduzzi, a citizen of Italy residing in England.[4]  Plaintiff alleges that Guiduzzi was contacted by these defendants in his multiple capacities as director of Plaintiff, director of PLG Consulting ("PLG"),[5] and

---

[2]     See Doc. 149, Pl.'s 3rd Am. Compl. p. 5.

[3]     See id. at 24.

[4]     See id. at 23.

[5]     See id.  Plaintiff alleges that PLG is a corporation organized under the laws of England and Wales and that it is owned and controlled by Guiduzzi. Id. p. 15.

2

director of F&G Consultancy (F&G").[6] Andrea Frattini ("Frattini"), Guiduzzi's partner in F&G, represented that the City of Houston would agree to pay infrastructure costs to re-develop the land.[7]

In July 2008, Plaintiff agreed to invest $11,000,000 in the EpiCentre project in exchange for a ten-percent equity ownership in Defendant EpiCentre Development Associates, LLC, ("EDA") a Texas limited liability corporation controlled by Delaney, Botero, Iragorri.[8] It was represented that corporations under their control including Vantage Realty Holdings, LLC, and Vantage Plus Corporation (collectively, the "Epicentre Defendants") would develop the property.[9] Plaintiff's ownership interest in EDA was documented in a capital subscription agreement which represented that Defendant EDA would "acquire title to the real estate formerly known as AstroWorld."[10] The subscription agreement was signed on July 23, 2008, by Botero and Guiduzzi.[11]

Over the next few years, Plaintiff alleges that various defendants consistently reported that the land purchase was near

---

[6]     See id. at 15-16, 27.

[7]     See id. at 28.  Studio Andrea Frattini was previously a separate defendant, but Plaintiff's current pleadings recognize that Studio Andrea Frattini is not an independent organization but merely Frattini's personal d/b/a in accordance with Italian law.  See id. at 17.

[8]     Id. at 29.

[9]     See id.

[10]     See id.

[11]     See id. at 28-29.

completion.[12]   On July 7, 2009, Plaintiff entered a consulting agreement with F&G, whereby F&G would be paid a consulting fee based on the value of Plaintiff's investment.[13]   Based on this consulting agreement, Plaintiff alleges that Guiduzzi also acted on F&G's behalf in subsequent fraudulent communications with Plaintiff.[14]   At some point, F&G agreed to a similar "relationship management" agreement with the Epicentre Defendants, whereby F&G was compensated for locating investors for the Epicentre development.[15]

On September 23 and 24, 2009, the Epicentre Defendants, Guiduzzi, and Frattini, met in Houston, Texas, to discuss the AstroWorld property investment.[16]

On May 21, 2010, the owners of the AstroWorld property sold the entire parcel to MHB Asset, LP, ("MHB") an entity based in Texas not related to any party to this litigation.[17]   This purchase was not reported to Plaintiff, but the Epicentre Defendants continued to represent that they were "poised to take control" of the property.[18]

---

[12]   See id. at 30-35.

[13]   See id. at 35.

[14]   See id.

[15]   See id.

[16]   See id.

[17]   See id. at 38.

[18]   See id.

EDA represented to Plaintiff that it required additional operating funds in the amount of $1,500,000 in order to take control of the land prior to closing.[19]  Defendants Guiduzzi and Frattini, acting in their personal capacities, agreed to loan EDA €300,000 and obtained those funds from Plaintiff.[20]

In early 2011, the Epicentre Defendants represented that EDA had acquired the AstroWorld property and would require at least $10,000,000 in operating funds to move forward with development.[21]

In April 2011, Guiduzzi, acting for the benefit of PLG and F&G, emailed Delaney and represented that Plaintiff could provide a loan of $13,000,000 through a letter of credit.[22]

Plaintiff, relying on the advice of Guiduzzi, PLG, F&G, and others, authorized a loan of $13.65 million dollars to complete the purchase the AstroWorld property.[23]  Funds in the total amount of $13,650,000 were wired to Defendant EDA to a Houston, Texas, title company on July 11 and 12, 2011.[24]  Delaney later represented that the loan proceeds were used towards "site work infrastructure."[25] The loan was confirmed by a promissory note signed by EDA and

---

[19]   See id. at 41-42.

[20]   See id. at 39.

[21]   See id. at 41.

[22]   See id. at 34.

[23]   See id. at 42.

[24]   See id. at 42-43.

[25]   See id. at 44.

Vantage Financial as EDA's co-manager, and was scheduled to become due on or about July 27, 2012.[26]  Guiduzzi signed a credit facility agreement on behalf of Plaintiff regarding repayment of the note.[27]

On July 26, 2011, Defendants Botero, Guiduzzi, and Frattini traveled to Fort Worth, Texas, in order to attend the closing of the sale of a portion of the AstroWorld property.[28]  On July 27, 2011, Defendant EDA purchased eleven acres of the AstroWorld property from MHB.[29]  Despite purchasing only eleven acres, on August 3, 2011, Delaney informed Guiduzzi and Frattini that EDA had "consummated agreements of purchase and sale for all the 104.2 acres of land that will become EpiCentre Houston."[30]  The email also stated that on July 27, 2011, Defendant EDA "closed and purchased the first scheduled segment of the land."[31]  In December 2011, Delaney again represented that EDA was "in complete control" of the AstroWorld property.[32]

Following the eleven-acre purchase, EDA mortgaged the land twice for over $3,500,000; first on January 23, 2012, and again on

---

[26]    See id.

[27]    See id.

[28]    See id. at 47.

[29]    See id.

[30]    Doc. 78-2, Ex. 2 to Pl.'s 2nd Am. Compl., Delaney email dated August 3, 2011.

[31]    Id.

[32]    See Doc. 149, Pl.'s 3rd Am. Compl. p. 49.

March 26, 2012.[33]  During this period, the Epicentre Defendants entered into negotiations with MHB for the purchase of an additional forty-eight acres of the AstroWorld property, but were unable to raise the necessary capital.[34]

In May 2012, Delaney and Frattini forwarded a status report to Plaintiff indicating that the Epicentre development was going according to schedule.[35]

On October 31, 2012, Frattini forwarded information to Guiduzzi regarding a nonexistent meeting with bank officials in Italy.[36]  Guiduzzi forwarded a copy of the report to Delaney, relaying that Frattini told him that "this version is very believable."[37]

On November 29, 2012, the Epicentre Defendants formed Epicentre Development Associates II, LLC ("EDA II").[38] On December 4, 2012, EDA sold the eleven-acre parcel to EDA II for an unknown sum and failed to report the sale to Plaintiff.[39]  On March 18, 2013, EDA II sold the eleven acres to a third party.[40]

---

[33]    See id. at 50.

[34]    See id.

[35]    See id. at 45-46.

[36]    See id. at 47.

[37]    See id.

[38]    See id. at 50.

[39]    See id. at 51.

[40]    See id.

On May 31, 2013, in minutes from an EDA board meeting sent by email to Plaintiff, Delaney represented that EDA still owned the eleven-acre parcel.[41]

On June 4, 2014, Delaney met with Plaintiff's representatives in Houston, admitting that Plaintiff's $25,000,000 investment and loan proceeds had been misspent and that EDA had no ownership interest in any of the AstroWorld property.[42]   Delaney blamed the loss in part on the mismanagement of Botero.[43]

## B.  **Procedural History**

Plaintiff filed this action on July 22, 2014.[44]   On April 30, 2015, this court issued a memorandum and recommendation regarding several defendants' motions to dismiss based on personal jurisdiction and failure-to-state-a-claim grounds.[45]   The district court adopted the memorandum and recommendation on July 7, 2015.[46]

On September 11, 2015, EDA filed a motion for leave to amend its counterclaim.[47]   The same day, Plaintiff filed a motion for leave to file its third amended complaint.[48]   Both motions were

---

[41]   See id.

[42]   See id.

[43]   See id.

[44]   See Doc. 1, Pl.'s Orig. Compl.

[45]   See Doc. 119, Mem. and Recommendation dated Apr. 30, 2015.

[46]   See Doc. 138, Order dated Jul. 7, 2015.

[47]   See Doc. 141, Mot. for Leave to Amend Countercl.

[48]   See Doc. 142, Mot. for Leave to File 3rd Am. Compl.

granted by the court.[49]

On October 19, 2015, the Epicentre Defendants filed a motion to dismiss, asserting that Plaintiff had failed to allege fraud with particularity and that it failed to state a claim against any of the defendants, excepting Plaintiff's breach of contract claims against EDA.[50]  The same day, Frattini filed a motion to dismiss on the basis of personal jurisdiction.[51]

On October 20, 2015, Guiduzzi and PLG filed a motion to dismiss for failure to state a claim.[52]  F&G filed a motion joining Guiduzzi and PLG's motion.[53]  The same day, Frattini also filed a motion to dismiss for failure to state a claim.[54]

On October 27, 2015, the court held a status conference to set dates for Plaintiff's responses to the pending motions.[55]

On November 23, 2015, Plaintiff filed a motion for partial summary judgment against EDA for its failure to repay the $13.65

---

[49]     See Doc. 143, Order granting Doc. 141 dated Sept. 14, 2015; Doc. 148, Order granting Doc. 142 dated Oct. 6, 2015.

[50]     See Doc. 157, Epicentre Defs.' Mot. to Dismiss.

[51]     See Doc. 158, Frattini's Mot. to Dismiss.

[52]     See Doc. 159, Guiduzzi and PLG's Mot. to Dismiss.

[53]     See Doc. 160, F&G's Mot. to Dismiss, Amended by Doc. 175.

[54]     See Doc. 161, Frattini's Mot. to Dismiss.

[55]     See Doc. 164, Status Conference held Oct. 27, 2015.

million note.[56]  On December 4, 2015, EDA filed a response.[57]

On December 4, 2015, Plaintiff filed its response to the Epicentre Defendants' motion to dismiss.[58]  On December 7, 2015, Plaintiff filed its response to Frattini's motion to dismiss for lack of personal jurisdiction.[59]  On December 10, 2015, the Epicentre Defendants filed a reply in support of their motion to dismiss.[60]

On December 11, 2015, Plaintiff filed responses to Frattini, Guiduzzi, PLG and F&G's motions to dismiss for failure to state a claim.[61]  On December 17, 2015, Guiduzzi, PLG, and F&G filed replies in support of their motions to dismiss.[62]

On December 23, 2015, Plaintiff filed a motion for sanctions against Frattini.[63]  On January 13, 2016, Frattini filed a response to Plaintiff's motion and a cross-motion for sanctions.[64]

## II.  Legal Standards

---

[56]    See Doc. 166, Pl.'s Mot. for Partial Summ. J.

[57]    See Doc. 168, Epicentre Defs.'s Resp. to Pl.'s Mot. for Partial Summ. J.

[58]    See Doc. 169, Pl.'s Resp. to Epicentre's Mot. to Dismiss.

[59]    See Doc. 172, Pl.'s Resp. to Frattini's Mot. to Dismiss.

[60]    See Doc. 177, Epicentre's Reply in Support of its Mot. to Dismiss.

[61]    See Doc. 179, Pl.'s Resp. in Opposition to Frattini's Mot. to Dismiss; Doc. 181, Resp. in Opposition to Guiduzzi, PLG, & F&G's Mot. to Dismiss.

[62]    See Doc. 189, Guiduzzi and PLG's Reply in Support of its Mot. to Dismiss; Doc. 190, F&G's Reply in Support of its Mot. to Dismiss.

[63]    See Doc. 191, Pl.'s Mot. for Sanctions.

[64]    See Doc. 194, Frattini's Cross-Mot. for Sanctions.

10

Defendant Frattini moves to dismiss Plaintiff's suit for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(2). Defendants PLG, F&G, Guiduzzi, Frattini, and the Epicentre Defendants move to dismiss Plaintiff's suit for failure to state a claim pursuant to Rule 12(b)(6).

## A.  <u>Rule 12(b)(2)- Lack of Personal Jurisdiction</u>

The Federal Rules of Civil Procedure authorize a court to dismiss an action against a defendant when the court lacks personal jurisdiction over that defendant. <u>See</u> Fed. R. Civ. P. 12(b)(2). On a motion to dismiss decided without benefit of an evidentiary hearing, the plaintiff bears the burden of establishing a prima facie case in support of jurisdiction. <u>Monkton Ins. Servs., Ltd. v. Ritter</u>, 768 F.3d 429, 431 (5th Cir. 2014).

The district court may receive "any combination of recognized methods of discovery," including affidavits, interrogatories, and depositions to assist it in the jurisdictional analysis. <u>Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.</u>, 517 F.3d 235, 241 (5th Cir. 2008) (quoting <u>Thompson v. Chrysler Motors Corp.</u>, 755 F.2d 1162, 1165 (5th Cir. 1985)). The court resolves all conflicts in the evidence in favor of the plaintiff and accepts as true all of the plaintiff's uncontroverted allegations. <u>Johnston v. Multidata Sys. Int'l Corp.</u>, 523 F.3d 602, 609 (5th Cir. 2008).

A federal court has personal jurisdiction over a nonresident defendant if the forum state's long-arm statute confers

jurisdiction and if jurisdiction is consistent with due process under the United States Constitution.  Id.  In Texas, the long-arm statute permits personal jurisdiction to the full extent allowed by the Due Process Clause.  Id.

> The Due Process Clause . . . permits the exercise of personal jurisdiction over a nonresident defendant when (1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend "traditional notions of fair play and "substantial justice."

Latshaw v. Johnston, 167 F.3d 208, 211 (5th Cir. 1999)(quoting Int'l Shoe Co. v. Wash., 326 U.S. 310, 316 (1945)).

Minimum contacts are established with a state by a defendant whose "conduct and connection" with that state are significant enough that the defendant "should reasonably anticipate being haled into court" in that state.  Nuovo Pignone, SpA v. STORMAN ASIA M/V, 310 F.3d 374, 379 (5th Cir. 2002)(quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985)).  The defendant must "purposely avail[] itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws."  Id. (quoting Burger King Corp., 471 U.S. at 475).

General jurisdiction exists when contacts are so continuous and systematic as to render the defendant essentially at home.  Daimler AG v. Bauman, ___ U.S. ___, 134 S. Ct. 746, 754 (2014).  Specific jurisdiction exists if the asserted cause of action arises out of or is related to the defendant's contact with the forum.  Id.

12

Upon a showing of minimum contacts, the court considers the second prong of the due process analysis, whether personal jurisdiction comports with traditional notions of fair play and substantial justice.  See <u>Ruston Gas Turbines, Inc. v. Donaldson Co.</u>, 9 F.3d 415, 421 (5th Cir. 1993).

## B.  <u>Rule 12(b)(6)- Failure to State a Claim</u>

Pursuant to Rule 12(b)(6), dismissal of an action is appropriate whenever the complaint, on its face, fails to state a claim upon which relief can be granted.  When considering a motion to dismiss, the court should construe the allegations in the complaint favorably to the pleader and accept as true all well-pleaded facts.  <u>Sullivan v. Leor Energy, LLC</u>, 600 F.3d 542, 546 (5th Cir. 2010).

A complaint need not contain "detailed factual allegations" but must include sufficient facts to indicate the plausibility of the claims asserted, raising the "right to relief above the speculative level." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007); <u>see also</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). Plausibility means that the factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678.  A plaintiff must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." <u>Twombly</u>, 550 U.S. at 555.  In other words, the factual allegations must allow

for an inference of "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678.

Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Twombly, 550 U.S. at 545.  Under Rule 9(b), a party alleging fraud or mistake must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); United States ex rel. Grubbs v. Kanneganti, 565 F.3d 180, 185 (5th Cir. 2009).  Pleadings alleging fraud require "simple, concise, and direct" allegations that make relief plausible under the standard of Twombly.  Id.

C.  **Rule 56- Summary Judgment Standard**

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Brown v. City of Houston, Tex., 337 F.3d 539, 540-41 (5th Cir. 2003).  A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001).  To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could

resolve the issue in favor of either party.  <u>Anderson</u>, 477 U.S. at
250; <u>Piazza's Seafood World, LLC v. Odom</u>, 448 F.3d 744, 752 (5th
Cir. 2006).

The movant must inform the court of the basis for the summary
judgment motion and must point to relevant excerpts from pleadings,
depositions, answers to interrogatories, admissions, or affidavits
that demonstrate the absence of genuine factual issues.  <u>Celotex</u>
<u>Corp.</u>, 477 U.S. at 323; <u>Topalian v. Ehrman</u>, 954 F.2d 1125, 1131 (5th
Cir. 1992).  If the moving party can show an absence of record
evidence in support of one or more elements of the case for which
the nonmoving party bears the burden, the movant will be entitled
to summary judgment.  <u>Celotex Corp.</u>, 477 U.S. at 322.  However, if
the party opposing summary judgment responds with evidence in
support of each challenged element, the case must be resolved at
trial.  <u>Id.</u> at 324.

When considering the evidence, "[d]oubts are to be resolved in
favor of the nonmoving party, and any reasonable inferences are to
be drawn in favor of that party."  <u>Evans v. City of Houston</u>, 246
F.3d 344, 348 (5th Cir. 2001); <u>see also</u> <u>Boston Old Colony Ins. Co.</u>
<u>v. Tiner Assocs. Inc.</u>, 288 F.3d 222, 227 (5th Cir. 2002).  The court
should not "weigh evidence, assess credibility, or determine the
most reasonable inference to be drawn from the evidence."  <u>Honore</u>
<u>v. Douglas</u>, 833 F.2d 565, 567 (5th Cir. 1987).

However, the nonmoving party must show more than "some

metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986).  Conclusory allegations, unsubstantiated assertions, improbable inferences, unsupported speculation, or only a scintilla of evidence will not carry this burden.  Brown, 337 F.3d at 541; Ramsey v. City of Henderson, Tex., 286 F.3d 264, 269 (5th Cir. 2002).

### III.  Analysis

#### A.  Personal Jurisdiction

Frattini argues that the court lacks both general and specific jurisdiction over him.  Frattini argues that as Plaintiff is a British citizen and Frattini's only contacts are through his association with F&G, a partnership with British citizenship, he, personally, has had no contacts with the State of Texas.[65]  Frattini additionally claims that under the fiduciary shield doctrine, the business transactions of F&G do not create personal jurisdiction over him in his position as a corporate officer.  Plaintiff does not contest that Frattini is not subject to general personal jurisdiction.  However, Plaintiff alleges that Frattini's role in EDA and as an officer in F&G created minimum contacts subject to specific personal jurisdiction.

With respect to specific personal jurisdiction, the Fifth Circuit employs a three-step analysis, which combines the due process and the specific jurisdiction considerations, to determine

---

[65]    See Doc. 158, Def. Frattini's Mot. to Dismiss p. 5.

16

whether the court can exercise specific jurisdiction:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

Nuovo Pignone, SpA, 310 F.3d at 378.  The determinative factor is that the act or acts upon which specific jurisdiction is based must be connected to the forum state and to the cause of action alleged. See id.

The court first addresses Frattini's argument that the actions of F&G cannot be attributed to him individually under the fiduciary shield doctrine.  In Stuart v. Spademan, 772 F.2d 1185, 1196 (5th Cir. 1985), the court considered whether the acts of a corporation can be attributed to its officers for purposes of personal jurisdiction.  There, the plaintiffs argued that the corporation's contacts with the forum state should be considered when deciding whether the corporation's president had sufficient minimum contacts with the forum to be sued there in his individual capacity.  Id.

The court acknowledged the general rule that a corporation will insulate its officers from the court's personal jurisdiction, but cautioned that "'if the corporation is not a viable one and the individuals are in fact conducting personal activities and using the corporate form as a shield, a court may feel compelled to

17

pierce the corporate veil and permit assertion of personal jurisdiction over the individuals.'" Id. at 1197 (quoting 4 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure: Civil § 1069 (Supp. 1984)).

The court found that following factors were to be considered in determining whether a corporation was the alter ego of its dominant shareholder: (1) the corporation was undercapitalized and without separate books; (2) its finances were not kept separate from individual finances, individual obligations were paid by the corporation; (4) the corporation was used to promote fraud or illegality; (5) corporate formalities were not followed; or (6) the corporation was merely a sham. Id. at 1197 (citing Lakota Girl Scouts Council, Inc. v. Havey Fund-Raising Management, Inc., 519 F.2d 634, 638 (8th Cir. 1975)). After considering all the facts, the court found that the Stuart plaintiffs had not demonstrated that the corporation was a facade for the corporate president's interests and activities to justify attributing the corporation's contacts to its president for jurisdictional purposes. Id. at 1198.

Although the fiduciary shield doctrine protects corporate representatives from the jurisdiction of a court when minimum contacts would otherwise give rise to personal jurisdiction, it will not protect defendants from their own alleged fraudulent or tortious acts. Duke Energy Intern., L.L.C. v. Napoli, 748 F. Supp.

2d 656, 680 (S.D. Tex. 2010); <u>Powerhouse Productions, Inc. v.</u>
<u>Widgery</u>, 564 F. Supp. 2d 672, 678 (E.D. Tex. 2008)(fiduciary shield
doctrine not applicable when corporate officer faces personal
liability from his own tortious activity); <u>see also</u> <u>Lewis v.</u>
<u>Fresne</u>, 252 F.2d 352, 359 n.6 (5th Cir. 2001)("[T]he shield is
removed if the individual's personal interests motivate his actions
. . . ." (internal quotation marks removed)).

Because Plaintiff's claims against Frattini are based in tort,
not contract, the fiduciary shield doctrine does not apply and the
court may consider Frattini's contacts with Texas through F&G to
determine whether his minimum contacts are sufficient for personal
jurisdictional purposes.

Plaintiff argues that a single tortious act directed at the
forum may establish specific jurisdiction. <u>See</u> <u>Lewis v. Fresne</u>,
252 F.3d 352, 358-59 (5th Cir. 2001); <u>Brown v. Flowers Indus., Inc.</u>,
688 F.2d 328, 332-33 (5th Cir. 1982). Plaintiff asserts that
Frattini purposefully directed activities towards Texas over a
period of several years and that Plaintiff's claims arise out of
these forum-related contacts. Plaintiff has alleged that Frattini
repeatedly traveled to Texas as part of an ongoing scheme to commit
fraud. Plaintiff has alleged that Frattini therefore committed
tortious conduct in Texas related to real estate located in Texas.

Frattini relies on the holding in <u>St. Martin & Mahoney,</u>
<u>A.P.L.C. v. Diversified Aircraft Holdings, Ltd.</u>, 934 F. Supp. 200,

19

204-05 (E.D. La. 1996), in support of his argument that his visits to Texas that culminated in the execution of the EpiCentre contract were too limited to create personal jurisdiction.  St. Martin & Mahoney involved the sale of an airplane owned and located in Louisiana to a purchaser in New York that utilized a Colorado broker.

Prior to executing the contract, a corporate officer of the New York purchaser inspected the aircraft in Louisiana incidental to a personal trip but did not discuss terms of any purchase at this meeting.  Id. at 203.  An interim "offer to purchase" agreement was signed, which allowed for a pre-purchase inspection by the purchaser in New York.  Id.  The same corporate officer flew to Louisiana to co-pilot the plane back to New York for the inspection.  Id.

Later, a purchase agreement was negotiated, drafted and executed in New York.  Id.  The purchase money was paid to an escrow account in Oklahoma and ultimately forwarded to the seller in Louisiana.  The New York purchaser received the keys to the plane via overnight carrier.  Id. at 204.

The court found that contracting with a Louisiana entity, the exchange of communications between New York and Louisiana during the contract formation, and two trips to Louisiana by an officer of the New York purchaser were insufficient to be "'characterized as purposeful activity invoking the benefits and protections of the

20

forum state's laws.'" <u>Id.</u> at 205 (quoting <u>Hydrokinetics, Inc. V.</u>
<u>Alaska Mechanical, Inc.</u>, 700 F.2d 1026, 1028 (5th Cir. 1983)).
Important in the court's analysis was the fact that the corporate
officer's visits to Louisiana were further removed from the
contract by the personal nature of the trips.   <u>Id.</u>

Unlike the situation in <u>St. Martin & Mahoney</u>, Frattini did not
simply make isolated visits to Texas unrelated to the Epicentre
contract. Thus, Plaintiff has alleged specific facts supporting its
contention that Frattini's visits were tortious actions directed at
the forum.

The court finds that Plaintiff has met its prima facie burden
of showing that Frattini had minimum contacts with the State of
Texas that are sufficient for the court to impose specific personal
jurisdiction over Frattini for his actions arising from those
contacts.

The court **RECOMMENDS** that Frattini's Rule 12(b)(2) motion to
dismiss be **DENIED**.

**B.   <u>Failure to State Claims</u>**

Defendants F&G, PLG, Guiduzzi, Frattini, and the Epicentre
Defendants all move to dismiss Plaintiff's complaint for failure to
state a claim against them.   All defendants contend that
Plaintiff's fraud claims fail to meet the elevated standard of Rule
9(b), requiring that Plaintiff identify which individual made a
misrepresentation, or the "who, what, when, where, and how" of

Plaintiff's fraud claims.  See Fed. R. Civ. P. 9(b); <u>U.S. ex rel.</u>
<u>Willard v. Humana Heath Plan of Tex.</u>, 336 F.3d 375, 384 (5th Cir.
2003). PLG argues that Plaintiff fails to state a claim against PLG
individually.  All defendants argue that Plaintiff fails to state
a valid RICO claim.  Frattini and the Epicentre Defendants
additionally argue that Plaintiff's negligent misrepresentation,
civil conspiracy, and breach of fiduciary duty claims fail to state
claims for relief.  The Epicentre Defendants also argue that
Plaintiff fails to state claims for conversion of chattel,
negligence, or the disregard of corporate formalities.  The court
considers each argument in turn.

**1.  Fraud**

The Epicentre Defendants, Guiduzzi, PLG, F&G, and Frattini all
contest Plaintiff's fraud claim, arguing that it fails to meet the
heightened standard of Rule 9(b).  Plaintiff responds that it has
sufficiently alleged fraudulent conduct by each defendant.

To state a prima facie case for fraud, a plaintiff must
establish:

> (1) that a material misrepresentation was made; (2) the
> representation was false; (3) when the representation was
> made, the speaker knew it was false or made it recklessly
> without any knowledge of the truth and as a positive
> assertion; (4) the speaker made the representation with
> the intent that the other party should act upon it; (5)
> the party acted in reliance on the representation; and
> (6) the party thereby suffered injury.

<u>In re FirstMerit Bank, N.A.</u>, 52 S.W.3d 749, 758 (Tex. 2001).  Rule
9(b) requires that "[i]n all averments of fraud or mistake, the

22

circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ.P. 9(b); see also United States v. Dow Chem. Co., 343 F.3d 325, 328 (5th Cir. 2003). The court will consider Plaintiff's specific allegations regarding each defendant.

### a.   The Epicentre Defendants

The Epicentre Defendants state that it is unclear what misrepresentations of fact were made, to whom they was made, and that Plaintiff was induced to act by any misrepresentation. The Epicentre Defendants further complain that Plaintiff "vaguely cites" memos, authored by them and that Plaintiff cannot show that it relied on any fraudulent statement merely because it signed a contract with EDA. Plaintiff responds that it has specifically cited multiple false statements made by the individual Epicentre Defendants with sufficient specificity to satisfy Rule 9(b).

Plaintiff first alleges that Botero and Delaney stated that they were the "owners of real estate" and that Plaintiff's initial investment would be the final ten percent of financing of the Epicentre development.[66] Plaintiff alleged that this was not true and that the other ninety percent of investors never existed.[67] Plaintiff alleges that the Epicentre Defendants knew the statements were false because Plaintiff's investment funds were used to pay existing debts and other individuals involved in Epicentre rather

---

[66]   See Doc. 149, Pl.'s 3rd Am. Compl. p. 28.

[67]   See id.

than to finance a land purchase as contracted.[68]   Plaintiff has stated that it relied on the statements made by the Epicentre Defendants prior to signing the subscription agreement.[69]

Plaintiff additionally alleges that, after the AstroWorld property was sold to a third-party, the Epicentre Defendants sent a memo stating that they were "poised to take control" and gain full ownership of the AstroWorld property.[70]   Relying on these statements, Plaintiff agreed to loan a further €300,000 to EDA for the purpose of closing on the property, which was not done.[71]

Plaintiff further alleges that the Epicentre Defendants represented that, with a final loan of over ten million dollars, Epicentre would be poised to take immediate control of the property.[72]  Plaintiff argues this representation was false because the AstroWorld property had been sold the year before Epicentre's representations.[73]   After the money was transferred, Delaney represented that Epicentre had made expenditures that included nearly fourteen million dollars spent on "site work-infastructure," although Epicentre did not own the property and the land remained

---

[68]     See id. at 30-31.

[69]     See id. at 68.

[70]     See id. at 38.

[71]     See id.

[72]     See id. at 42.

[73]     See id.

undeveloped.[74]  In addition, Plaintiff alleges that EDA II was formed in late 2012 and the portion of the property owned by EDA was transferred to EDA II without notice to Plaintiff.[75]

Plaintiff has thus stated claims of fraud with particularity against the Epicentre Defendants; in its 103-page complaint, Plaintiff identifies numerous specific alleged misrepresentations made by each of the Epicentre Defendants as part of a long-term plan to defraud Plaintiff necessary to state a prima facie case for fraud. The court is satisfied that the Epicentre Defendants have been sufficiently apprised of their alleged fraudulent conduct to comply with Rule 9(b).

### b. Guiduzzi, F&G, and PLG

Plaintiff alleges that Guiduzzi, individually and through business entities F&G and PLG, deliberately forwarded false and misleading information to induce Plaintiff to enter into the contracts at issue.

In his capacity as a director for Plaintiff and as part of F&G's service agreement, Guiduzzi relayed many of the specific alleged misleading and fraudulent statements made by the Epicentre Defendants to Plaintiff.  In this court's previous memorandum and recommendation, the court found that Plaintiff had failed to state a claim that met heightened pleading standards because Guiduzzi

---

[74]  See id. at 43.

[75]  See id. at 50.

stated he had merely relayed information and that there was no indication that he knew information he passed to Plaintiff was false at the time.[76]

Plaintiff has re-pleaded its fraud claim, adding factual support to its allegation that Guiduzzi was aware of the falsity of the information he was providing to Plaintiff.[77]   Specifically, Plaintiff now alleges that Guiduzzi, along with Frattini, specifically requested documentation that no loss of investments had occurred in September 2010.[78]   Plaintiff alleges that F&G signed an agreement with the Epicentre Defendants whereby F&G agreed to locate investors for Epicentre.[79]   Plaintiff additionally added claims that in September 2012, Guiduzzi, along with Delaney, worked to develop an invoice for €40,000,000, which Frattini signed on behalf of Plaintiff's parent company.[80]   Additionally, Guiduzzi forwarded an email to Delaney recounting a bank meeting that had not occurred, stating that "[Frattini] told me that this version is very believable."[81]   In February 2013, Plaintiff alleges that Guiduzzi falsified invoices totaling €100,000, specifically asking

---

[76]    See Doc. 119, Mem. & Rec. dated Apr. 30, 2015.

[77]    Defendant Guiduzzi did not oppose the Amended Complaint. See Doc. 146, Guiduzzi's Resp. to Pl.'s Mot. for Leave to File 3rd Am. Compl.

[78]    See Doc. 149, Pl.'s 3rd Am. Compl. p. 39.

[79]    See id. at 35.

[80]    See id. at 46.

[81]    See id. at 47.

that the invoices not credit EDA.[82]

Guiduzzi, PLG, and F&G respond that Plaintiff fails to allege any motive for Guiduzzi to commit fraud, and therefore has not stated a claim against him in an individual or representative capacity.  Plaintiff responds that motive to commit fraud is not an element in establishing a prima facie case and that it has successfully argued that Guiduzzi passed on statements he knew were false, namely that EDA was poised to purchase the AstroWorld property even after he knew or should have known the property had already been sold.

In its previous motion, the court found that Plaintiff's fraud claim against Guiduzzi was insufficient because there was no indication that Guiduzzi knew the statements he made or relayed were false at the time he made them.  The Fifth Circuit has long held that a plaintiff must set forth specific facts that support an inference of fraud, and may not simply generally allege that a defendant had fraudulent intent.  See Tuchman v. DSC Commc'ns Corp., 14 F.3d 1061, 1068 (5th Cir. 1994).  Here, Plaintiff now alleges specific facts that include Guiduzzi's agreement to work with Epicentre Defendants to obtain funding, Guiduzzi's email to Epicentre Defendants stating that a version of a fictional meeting was "believable," and Guiduzzi requesting that an invoice not be credited to EDA.  The court finds that these facts, taken together,

---

[82]    See id. at 48.

27

offer sufficient support that Guiduzzi made false statements with the intent to deceive Plaintiff necessary to state a prima facie case for fraud.

### c. Frattini

Frattini also argues that Plaintiff has failed to state a claim for fraud against him in his individual capacity. Specifically, Frattini argues that Plaintiff cannot prove that Frattini communicated directly with Plaintiff while committing any alleged fraud.

Frattini lists the specific actions Plaintiff alleges he committed in the context of its fraud claim, some of which are discussed above in connection with Guiduzzi and F&G. Specifically, Plaintiff alleges that Frattini provided a report on Studio Frattini letterhead that included false information regarding the status of EDA in 2012. Plaintiff also alleges that Frattini manufactured a meeting in Italy and passed a version of the nonexistent meeting on to Guiduzzi. Frattini argues that because he forwarded the meeting details to Guiduzzi, who forwarded them to Epicentre Defendants, he did not communicate directly with Plaintiff and that Plaintiff therefore has not established a prima facie fraud claim.

Frattini argues that because the particular actions complained of were not material representations and were not directly made to Plaintiff, that Plaintiff cannot raise any fraud claim against him

28

personally.   But Plaintiff does not base its fraud claim on these acts.   Instead, Plaintiff maintains that Frattini sent it false information in order to induce it to enter into business with the Epicentre Defendants and provided false information individually and through F&G throughout the project.

For example, in 2008, before Plaintiff signed the initial subscription agreement, Frattini stated that the City of Houston would pay infrastructure costs in order to see the AstroWorld theme park redeveloped.[83]  Frattini also communicated with Plaintiff in 2012, representing that things were going according to schedule.[84] Frattini's subsequent acts, including signing a letter of credit on behalf of Plaintiff's parent, not disclosing information to Plaintiff regarding the status of EDA, and forwarding fraudulent meeting notes, may not be independent acts of fraud standing by themselves but rather serve as circumstantial evidence that Frattini knowingly made false statements at the time he made them. See Tuchman at 1068; see also Spoljaric v. Percival Tours, Inc., 708 S.W.2d 432, 434 (Tex. 1986) (holding that while a party's intent is determined at the time the representation is made, intent may be inferred by the party's subsequent acts).   Plaintiff has offered sufficient evidence to satisfy Rule 9(b)'s standard as applied to Frattini.

---

[83]   See id. at 27.

[84]   See id. at 45-46.

As Plaintiff has sufficiently stated a claim against defendants, the court **RECOMMENDS** that defendants' motion to dismiss Plaintiff's fraud claims be **DENIED**.

### 2. Civil Conspiracy

The Epicentre Defendants and Frattini move to have Plaintiff's civil conspiracy claims against them dismissed based on Plaintiff's failure to state a claim for fraud. Because, as discussed supra, Plaintiff has stated fraud claims that satisfy Rules 8(a) and 9(b), the court **RECOMMENDS** that defendants' motion to dismiss civil conspiracy claims be **DENIED**.

### 3. RICO

Congress enacted RICO to prohibit conduct involving a pattern of racketeering activity. See Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 453 (2006); Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer, 90 F.3d 118, 122 (5th Cir. 1996). "One of RICO's enforcement mechanisms is a private right of action, available to '[a]ny person injured in his business or property by reason of a violation' of the RICO's substantive restrictions." Anza, 547 U.S. at 453 (quoting 18 U.S.C. § 1964(c)).

RICO makes it unlawful for "any person employed by or associated with any enterprise engaged in, or in the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."

18 U.S.C. § 1962(c).  Additionally, a conspiracy to commit acts under subsection (c) is unlawful under section (d).  18 U.S.C. § 1962(d).  The substantive requirements of 18 U.S.C. § 1962 are the same regardless of whether the suit is civil or criminal.  St. Paul Mercury Ins. Co. v. Williamson, 224 F.3d 425, 446 n.15 (5th Cir. 2000).

Defendants contend that Plaintiff's present complaint does not contain sufficient facts to state a claim under RICO. Specifically, all defendants challenge Plaintiff's ability to cite two predicate offenses.  Additionally, Frattini argues that Plaintiff is unable to establish continuity or the existence of an enterprise.

### a.  Pattern of Racketeering Activity

A pattern is created by two or more predicate acts that are related and constitute or pose a threat of continued criminal activity.  18 U.S.C. § 1961(5); Brown v. Protective Life Ins. Co., 353 F.3d 405, 407 (5th Cir. 2003).  Continuity of criminal activity may refer to either a closed period of repeated conduct or an open-ended period that threatens repetition.  Zastrow v. Houston Auto Imports Greenway Ltd., 789 F.3d 553, 561 (5th Cir. 2015 (quoting Word of Faith World Outreach Ctr. Church, Inc., 90 F.3d at 122)).

In the context of a RICO claim, the term "predicate acts" refers to either state or federal crimes.  St. Germain v. Howard, 556 F.3d 261, 263 (5th Cir.) cert. denied, 557 U.S. 920 (2009).  In

this case, Plaintiff has alleged predicate acts of mail fraud under 18 U.S.C. § 1341, wire fraud under 18 U.S.C. § 1343, unlawful conversion, the Travel Act under 18 U.S.C. § 1952, money laundering under 18 U.S.C. §§ 1956(a)(1)(A)(I) and (a)(2), and bank fraud under 18 U.S.C. § 1344.  See 18 U.S.C. § 1961(1)(listing mail fraud and wire fraud as predicate acts under RICO).

The Epicentre Defendants respond that Plaintiff's claimed predicate acts are inapplicable.  Defendants argue that Plaintiff cannot plead predicate acts of mail fraud or wire fraud because its fraud claim is insufficient.  They additionally maintain that the bank fraud predicate act should be dismissed because Plaintiff is not a bank.  Epicentre Defendants argue that Plaintiff's claims under the Travel Act lack any specificity regarding travel or how any travel promoted money laundering.  Similarly, they state that Plaintiff does not explain what unlawful activity defendants committed, or what was done with the money to further promote unlawful activity, so Plaintiff's money laundering claim should be dismissed.  Finally, they argue that conversion is not a RICO predicate act, and Plaintiff's allegations are without sufficient detail to state a claim.

The elements of mail and wire fraud are essentially identical: the use of mail or wire communications to execute a scheme to defraud with the specific intent to defraud or deceive.  See 18 U.S.C. §§ 1341, 1343; Allstate Ins. Co. v. Plambeck, 802 F.3d 665,

32

675 (5th Cir. 2015).  "Once membership in a scheme to defraud is established, a knowing participant is liable for any wire communication which subsequently takes place or which previously took place in connection with the scheme." Plambeck (quoting United States v. Stalnaker, 571 F.3d 428, 436 (5th Cir. 2009)).

Defendants argue that Plaintiff has failed to allege an incident of mail or wire fraud because it has failed to plead fraud with particularity.  As discussed supra, Plaintiff has stated fraud claims against all remaining defendants, and has therefore properly alleged specific claims of mail and wire fraud because the fraud involved the use of wire and mail facilities.

The federal bank fraud statute requires pleading that a defendant knowingly executed or attempted to execute a scheme to either defraud a financial institution or "to obtain any of the moneys, funds, credits, assets, securities, or other property owned by . . . a financial institution, by means of false or fraudulent pretenses, representations, or promises."  18 U.S.C. § 1344. Plaintiff argues that because the bank fraud statute is patterned after the broad mail and wire fraud statutes, that it has pleaded a predicate act because the money Plaintiff provided was under the control of a financial institution before it was provided to defendants.[85]  Although Plaintiff is correct that the statute does not specifically limit bank fraud claims to banks, the statute was

---

[85]     See Doc. 149, P.'s 3rd Am. Compl. p. 46.

created to protect the financial integrity of banks, and this court has previously held that only financial institutions have standing to allege bank fraud violations as RICO predicate acts. <u>Vanderbilt Mort. and Fin., Inc. v. Flores</u>, 735 F. Supp. 2d 679, 696-97 (S.D. Tex. 2010). Because Plaintiff has not alleged that it is a financial institution or that defendants attempted to defraud a bank or to take money owned by a bank, it has not alleged a predicate act of bank fraud.

The federal money laundering statute makes it illegal for an individual:

> knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity with the intent to promote the carrying on of specified unlawful activity; or . . . transports, transmits, or transfer a monetary instrument of funds from a place in the United States to or through a place outside the United States with the intent to promote the carrying on of specified unlawful activity.

18 U.S.C. § 1956(a)(1)-(2). Plaintiff alleges defendants' actions violated 18 U.S.C. § 1956 because defendants derived proceeds from a mail/wire fraud and deposited the funds in a financial institution. The Fifth Circuit has held that payment to co-conspirators for their participation amounts to promoting the carrying on of unlawful activity. <u>U.S. v. Valuck</u>, 286 F.3d 221, 226 (5th Cir. 2002). Here, Plaintiff has alleged that Epicentre Defendants committed fraud by misapplying funds intended for the

purchase of real property.   In U.S. v. Valuck, the Fifth Circuit upheld a money laundering conviction wherein an individual "promoted" wire fraud as defined in the money laundering statute by negotiating cashier's checks containing funds obtained by wire fraud.   Id. at 227-28.   Plaintiff has therefore alleged a predicate act of money laundering under 18 U.S.C. § 1956(a) based on the Epicentre Defendants' distribution to corporate entities controlled by Epicentre Defendants those funds obtained from the initial subscription agreement.

The Travel Act makes it a crime to travel or use interstate commerce, including the mail, with the intent to distribute the proceeds of any unlawful activity, or to "promote, manage, carry on, or otherwise facilitate" any business enterprise involving gambling, liquor, narcotics, controlled substances, or prostitution, or any act indictable under chapter 53 of Title 31 of the U.S. code, including money laundering.   18 U.S.C. § 1952; 31 U.S.C. § 5340(1).   Plaintiff alleges that defendants traveled to meetings in Texas and Florida and used mail and wires to facilitate their scheme.[86]   Epicentre Defendants argue that Plaintiff has not stated sufficient specificity about who traveled, when, or how such travel promoted money laundering or what money was laundered. Plaintiff has alleged that defendants met in Houston, Dallas, and

---

[86]   See Doc. 169, P.'s Resp. to Epicentre Defendants' Mot. to Dismiss p. 32-33.

Miami in furtherance of their alleged fraud. Plaintiff has therefore pleaded a predicate act pursuant to 18 U.S.C. § 1952.

Although Plaintiff characterizes Section 2314 as a "conversion" statute, it deals with the transportation of stolen goods in interstate or foreign commerce.  See Dowling v. U.S., 473 U.S. 207, 215 (1985); 28 U.S.C. § 2314.  To violate the statute, a defendant must have "transported goods, wares, or merchandise in interstate or foreign commerce," and must know that the goods "were stolen, converted, or taken by fraud."  Dowling, 473 U.S. at 215.  Plaintiff's claimed violation cites the statutory language without explanation of who transported money in interstate commerce or that any defendant knew such money were obtained by fraud.[87]

In Dowling, the Supreme Court explained that Section 2314 was created to prevent interstate transportation of stolen property, and limited the statute language to physical goods that had been stolen or obtained by fraud.  Id. at 215-16. Based on the Court's holding in Dowling, Plaintiff has not alleged a predicate act under 28 U.S.C. § 2314 because it has only alleged that money was transferred, not that a stolen good or ware, including specific physical money, was transported in interstate commerce.

Plaintiff has pleaded multiple predicate acts; Frattini asserts that Plaintiff has failed to establish a pattern of acts as required under RICO.  Frattini argues that Plaintiff has asserted

---

[87]     See Doc. 149, P.'s 3rd Am. Compl. p. 60.

multiple acts of fraud that are part of a single transaction, so that the alleged conduct fails to constitute continuing activity. See Delta Truck & Tractor, Inc. v. J.I. Case Co., 855 F.2d 241, 244 (5th Cir. 1988).

Continuity may be shown either by repeated conduct over a closed period or by an open-ended period of conduct with a threat of repetition. H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 241 (1989). Continuity over a closed period requires evidence of "a series of related predicates extending over a substantial period of time," in excess of a weeks or months. Id.

Here, Plaintiff has alleged that defendants engaged in a long-term plan to defraud it, beginning in 2008 and ending in 2014, when the loss of Plaintiff's entire investment was disclosed, and committed multiple predicate acts during the closed period. Unlike Delta Truck & Tractor and similar cases where a plaintiff's claims were based on acts based on a single, otherwise lawful activity, Plaintiff has alleged multiple discrete acts committed over a period of years. Thus, the court finds that Plaintiff has properly alleged multiple predicate acts that formed a pattern of racketeering activity.

### b.  Enterprise

A RICO enterprise "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal

entity." 18 U.S.C. § 1961(4). It is, essentially, "a group of persons or entities associating together for the common purpose of engaging in a course of conduct." <u>Whelan</u>, 319 F.3d at 229 (citing <u>United States v. Turkette</u>, 452 U.S. 576, 583 (1981)); <u>see also</u> <u>Boyle v. United States</u>, 556 U.S. 938, 944 (2009)(quoting <u>Turkette</u>). An enterprise can be a formal organization that is itself a legal entity or an informal, nonlegal group known as an association-in-fact. <u>See Turkette</u>, 452 U.S. at 581-82; <u>Whelan</u>, 319 F.3d at 229.

Frattini argues that Plaintiff has failed to plead a RICO enterprise because its current pleading identifies EDA as the RICO enterprise. Although Frattini is correct that a defendant may not be both a RICO person and a RICO enterprise under Section 1962, Plaintiff has alleged that EDA is a RICO enterprise, not a defendant for its RICO claims.

Frattini also asserts that Plaintiff has not properly alleged an enterprise because it has not alleged an ongoing organization. However, Plaintiff has not alleged that the enterprise was a loosely organized association-in-fact; it has alleged that the corporation EDA was the RICO enterprise. An enterprise may be either an association-in-fact or a legal entity. <u>Bonner v. Henderson</u>, 147 F.3d 457, 459 (5th Cir. 1998). An enterprise is a legal entity when it has sufficient existence that it can sue or be sued and make decisions through its agents. <u>Id.</u> Because EDA was itself an ongoing legal entity, Plaintiff has properly alleged that

an ongoing organization existed.   The court finds that Plaintiff has properly alleged the existence of a RICO enterprise.

Frattini additionally argues that Plaintiff fails to allege that a nexus exists between the enterprise and the activity being conducted.   A nexus may be pleaded by alleging that a defendant committed predicate acts, that the defendant's association with the enterprise facilitated the acts, and that the acts had an effect on the enterprise.   See <u>Akin v. Q-L Investments, Inc.</u>, 959 F.2d 521, 533-34 (5th Cir. 1992).   Here, Plaintiff alleges Frattini committed predicate acts, namely wire fraud and violations of the Travel Act, and that these acts furthered the enterprise's racketeering activity.   It has thus alleged an adequate nexus as applied to Frattini.

Plaintiff has properly pleaded claims under subsections (c) and (d) of 18 U.S.C. § 1962.   The court therefore **RECOMMENDS** that defendants' motions to dismiss Plaintiff's RICO claim be **DENIED**.

### 4. Negligence and Negligent Misrepresentation

Plaintiff pleaded negligence claims against defendants Guiduzzi, Frattini, F&G, PLG, Botero, Delaney, Iragorri, and Vantage Realty and negligent misrepresentation claims against Botero, Delaney, Iragorri, Guiduzzi, and Frattini.[88]

The Epicentre Defendants and Frattini move to dismiss

---

[88]    <u>See</u> Doc. 149, P.'s 3rd Am. Compl. p. 81-90.  Plaintiff additionally alleged a negligence claim against Real, but voluntarily dismissed its claim against her without prejudice.  <u>See</u> Doc. 198, Order dated Mar. 9, 2016.

Plaintiff's negligence and negligent misrepresentation claims against them.   Defendants argue that the economic loss rule precludes Plaintiff's negligence and negligent misrepresentation claims.   Plaintiff responds that its negligence and negligent misrepresentation claims should not be dismissed because they seek damages beyond its breach of contract claims.

Texas law holds that under the economic loss rule a plaintiff may not recover in tort when its only damages are based on the non-performance of a contract.   Sw. Bell Tel. Co. v. DeLanney, 809 S.W.2d 493, 494 (Tex. 1991).   The Texas Supreme Court recently cautioned, however, that the economic loss rule applies "only in cases involving defective products or failure to perform a contract."   Sharyland Water Supply Corp. v. City of Alton, 354 S.W.3d 407, 415, 418 (Tex. 2011).   A party to a contract who files a lawsuit seeking economic damages for a tort is not necessarily barred from bringing that claim.   Id. at 418–19.

To determine whether the economic loss rule bars a tort claim, courts must consider "both the source of the defendant's duty to act and the nature of the remedy sought by the plaintiff." Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc., 960 S.W.2d 41, 45 (Tex. 1998) (quoting Crawford v. Ace Sign, Inc., 917 S.W.2d 12, 12 (Tex.1996)).   Generally, tort claims are not recoverable unless the plaintiff has suffered an injury independent from economic losses recoverable from a breach of contract claim.

40

Crawford, 917 S.W.2d at 13.

Plaintiff responds that the economic loss rule should not apply.  In support, Plaintiff relies on a Northern District of Texas case where a mortgagor was able to maintain negligence claims because she had adequately alleged independent reliance damages. See Hurd v. BAC Home Loans Servicing, LP, 880 F. Supp. 2d 747, 763 (N.D. Tex. 2012).  There, the plaintiff had sought recovery for numerous misrepresentations arising from her attempts to obtain a loan modification.  Id. at 763.  As a result of the negligent misrepresentations, she claimed that she had incurred additional damages for debt counseling services, attorney's fees, mental anguish, out-of-pocket expenses and foreclosure.  Id.  The court found that these alleged damages were over and above the economic loss arising out of the note and deed of trust and found the plaintiff's pleading was not subject to dismissal.  Id. at 764.

In its Third Amended Complaint, Plaintiff claims Botero, Delaney and Iragorri, along with Guiduzzi, and Frattini made misrepresentations to Plaintiff in the July 9, 2008 Memo, the August 3, 2011 email, the May 5, 2012 project status report and the September 21012 and February 2013 invoices and were negligent in their course of conduct with Plaintiff.[89]  Plaintiff further alleges that based on those misrepresentations, it proceeded with the investment of $11,000,000, and loans of €300,000 and $13,650,000.

---

[89]    See Doc. 149, P.'s 3rd Am. Compl. pp. 83, 88, 90, 98.

These are damages that arise from the breach of contract/fraudulent inducement claims and are barred by the economic loss rule.   Perhaps recognizing this, Plaintiff's live pleading is vague concerning the damages it seeks for negligent misrepresentation, stating only that it seeks "actual damages for pecuniary loss," and costs of suit.[90]   To the extent that Plaintiff's pecuniary loss includes the sums mentioned above, those claims are barred by the economic loss rule.

Plaintiff's demand for exemplary damages fares no better. Texas courts provide exemplary damages as a remedy only when damage results from fraud, malice, or gross negligence.  See Tex. Civ. Prac. & Rem. Code § 41.003.   Plaintiff may therefore recover exemplary damages under its fraud claims, but not for its negligent misrepresentation claims.  See Formosa Plastics Corp. USA, 960 S.W.2d at 45–47.

Plaintiff alleges that Botero, Delaney, Iragorri, Guiduzzi, F&G, PLG, Frattini, and Vantage Realty owed it common law duties of care that resulted in actual damages, described as "lost profits," and "loss of use," exemplary damages, and costs of suit.[91]

However, upon closer examination of the Third Amended Complaint, Plaintiff has failed to allege facts supplying an independent injury, even if the court could assume that common law

---

[90]    See id. p. 98.

[91]    See id.

42

duties of care existed between Plaintiff and these defendants.

For example, loss of use damages are intended to compensate a property owner for damages accrued from a period of lost use of the property.  J&D Towing, LLC v. American Alternative Ins. Co., 478 S.W.3d 649, 656 (Tex. 2016).  Plaintiff has not alleged that it lost the use of any property it owned; instead, Plaintiff's claims rely primarily on Defendants' failure to purchase the AstroWorld property.  This is the essence of Plaintiff's breach of contract/fraudulent inducement claims.  Thus, Plaintiff has not stated a claim for loss-of-use tort damages.

Similarly, there is no non-speculative support to a claim for lost profits arising from the failed purchase of the AstroWorld property.  See Texas Instruments, Inc. v. Teletron Energy Mgmt., Inc., 877 S.W.2d 276, 279 (Tex. 1994)(holding that lost profits must be shown by competent evidence with reasonable certainty).

Plaintiff additionally argues that it may maintain its negligence claims against the individual defendants because they are not signatories to a contract with Plaintiff.  Texas courts have repeatedly found, however, that when a plaintiff is seeking to recover economic losses by virtue of a contract, the economic loss rule applies even in the absence of privity of contract.  Sterling Chems., Inc. v. Texaco Inc., 259 S.W.3d 793, 799 (Tex. App.—Houston [1st Dist.] 2007) (listing cases).

The court finds that Plaintiff's negligence and negligent

43

misrepresentation damages are not based on an independent injury and are thus subject to the economic loss rule. See <u>Formosa Plastics Corp.</u>, 960 S.W.2d at 45.

Although the economic loss rule was not raised by all defendants, the court finds that the rule will bar Plaintiff from maintaining negligence or negligent misrepresentation claims as a matter of law against the other defendants, and thus **RECOMMENDS** that these claims be **DISMISSED** in their entirety. The court also **RECOMMENDS** that Plaintiff not be given another opportunity to replead these claims.

### 5. Breach of Fiduciary Duty

Plaintiff has sued Guiduzzi, Frattini and the "Officers and Directors"[92] of EDA for breach of fiduciary duty. The defendants move to dismiss Plaintiff's breach of fiduciary duty claims. They argue that Plaintiff has not alleged facts supporting special relationships between themselves and Plaintiff and that there is no fiduciary duty owed by managers of a closely held corporation to its shareholders. Frattini argues that Plaintiff has failed to

---

[92] The Third Amended Complaint identifies Botero as the chairman and chief executive officer of EDA. <u>See</u> Doc. 149, Pl.'s 3d Am. Compl. p. 11. Although Plaintiff alleges that "Delaney also handles the finances for EDA [and several other entities] and co-manages and runs them as well," Plaintiff fails to identify Delaney as an officer or director of EDA. <u>Id.</u> p. 12. The same is true with respect to Iragorri, who was identified as an officer of EDA II and "handled the finances of EDA [and several other entities] and co-manages and runs them as well." <u>Id.</u> p. 13. Plaintiff alleges that Pueche "is a member of EDA" and "had an equity and profit interest in EDA." <u>Id.</u> p. 20. The court cannot assume that Delaney, Iragorri or Pueche are officers or directors of EDA from the live pleading. Thus, the court assumes that only Botero is charged under this heading.

plead any relationship that could state a claim against him individually.

### a.   The "Officers and Directors" of EDA

Plaintiff purchased a ten-percent interest in EDA for $11,000,000 in May 2008.[93]   As a shareholder in EDA, Plaintiff claims that its officers and directors owed him a fiduciary duty of "truthful and accurate" disclosure of information.[94]

In Texas, a limited liability company ("LLC") may be organized similar to a limited partnership or it may be run by one or more managers, as in the case of a limited partnership. <u>See</u> Tex. Bus. Orgs. Code Ann. § 101.251.   In general, an LLC may expand or restrict its duties, including fiduciary duties, through its agreement.   Tex. Bus. Orgs. Code Ann. § 101.401.   Although there is no formal rule conferring a fiduciary duty on limited partners, a limited partner may owe a fiduciary duty if a plaintiff can show that the limited partner exercised management or control over the LLC. <u>See</u> <u>Tow v. Amegy Bank N.A.</u>, 976 F. Supp. 2d 889, 900 (S.D. Tex. 2013); <u>Strebel v. Wimberly</u>, 371 S.W.3d 267, 279 (Tex.App.—Houston [1st Dist.] 2012) (holding that a limited partner is not insulated from suit when they exercise control of a partnership in a way that justifies the recognition of duties).

---

[93]     <u>See</u> Doc. 157-2, Ex. A to Epicentre's Defs.' Mot. To Dismiss, Subscription Agreement p. 3.

[94]     <u>See</u> Doc. 149, Pl.'s 3rd Am. Compl. p. 75.

In their motion, the defendants rely on a Texas Supreme Court case for the proposition that there is no formal fiduciary duty owed by managers of closely held corporations to individual shareholders.  See Ritchie v. Rupe, 443 S.W.3d 856, 890 (Tex. 2014).  There, a minority shareholder in a closely held corporation alleged that the other shareholders, who were also members of the board of directors, engaged in "oppressive" actions and breached fiduciary duties when they refused to purchase the minority shareholder's shares for a fair value or meet with prospective outside purchasers.  Ritchie, 443 S.W.3d at 860.  The minority shareholder sued under the Texas Business Organizations Code and demanded that a receiver be appointed for the corporation because the acts of the directors were oppressive.  Id. at 864.

The Ritchie court reaffirmed the general rule that directors, or those acting as directors, owed a fiduciary duty to the corporation and that duty "includes the dedication of [their] uncorrupted business judgment for the sole benefit of the corporation."  Ritchie, 443 S.W.3d at 868.  The court found that the actions of the majority were not oppressive as a matter of law, observing that corporate conduct is only oppressive when it is "inconsistent with the honest exercise of business judgment and discretion by the board of directors."  Id. at 869, citing Texarkana Coll. Bowl v. Phillips, 408 S.W.2d 537, 539 (Tex. Civ. App.—Texarkana 1966, no writ).  In so finding, the court stated

that various common-law causes of action already existed to address misconduct by corporate directors and officers and those included: (1) an accounting; (2) breach of fiduciary duty; (3) breach of contract; (4) fraud and constructive fraud; (5) conversion; (6) fraudulent transfer; (7) conspiracy; (8) unjust enrichment; and (9) quantum meruit.  <u>Id.</u> at 882.  The court does not read <u>Ritchie</u> to preclude, as a matter of law, a breach of fiduciary duty claim against the officers and directors of EDA who were alleged to have acted for their own self-interests.

The court therefore finds that a breach of fiduciary duty claim is not foreclosed under Texas law and accordingly **RECOMMENDS** that the Epicentre Defendants' motion to dismiss Plaintiff's breach of fiduciary duty claim be **DENIED**.

### b. Frattini

Frattini argues that there is no contractual relationship that he owed to Plaintiff and that Plaintiff has not alleged sufficient facts to support the existence of an informal confidential relationship.[95]  Plaintiff responds that Frattini did have a contractual agreement with Plaintiff via the service agreement with F&G, and that in addition Plaintiff had a special relationship with Frattini.

Texas recognizes that an informal fiduciary duty can arise from a moral, social, or purely personal relationship of trust and

---

[95]    <u>See</u> Doc. 161, Frattini's Mot. to Dismiss p. 26.

confidence. <u>Associated Indem. Corp. v. CAT Contracting, Inc.</u>, 964 S.W.2d 276, 287 (Tex. 1998). To impose such an informal duty, the special relationship must exist prior to and apart from the agreement underlying the suit. <u>Meyer v. Cathey</u>, 167 S.W.3d 327, 331 (Tex. 2005). Here, Plaintiff has alleged that Frattini, as a member of F&G, and in his own capacity, breached his fiduciary duty.

The relationship alleged between Plaintiff and Frattini is complicated and appears to involve trust and confidence that Plaintiff reposed in Frattini. Whether this claim can withstand a motion for summary judgment is not for the court to consider at this time. The court accordingly **RECOMMENDS** that Frattini's motion to dismiss Plaintiff's breach of fiduciary duty claim be **DENIED**.

### 6. Conversion of Chattel

Plaintiff's alleges conversion of specific chattel against Epicentre Defendants in their individual capacity based on the $11,000,000 investment made as part of the initial subscription agreement. Defendants argue that the claim is both subject to the economic loss rule and that money is not specific chattel subject to a conversion claim. Plaintiff replies that the payment was "specific money" and therefore chattel, and that the economic loss rule does not apply because several individual parties were not signatories.

An action for conversion applies when "(1) plaintiff owned,

48

had legal possession of, or was entitled to possession of the property; (2) defendant assumed and exercised dominion and control over the property in an unlawful and unauthorized manner, to the exclusion of and inconsistent with plaintiff's rights; (3) plaintiff made a demand for the property; and (4) defendant refused to return the property." <u>Felchak v. JP Morgan Chase Bank, N.A.</u>, 2013 WL 1966972, at *3 (S.D. Tex. May 10, 2013) (quoting <u>Allan Reuber Chevrolet, Inc. v. Grady Chevrolet, Ltd.</u>, 287 S.W.3d 877, 888 (Tex.App.—Dallas 2009, no pet.)).

As discussed above, the economic loss rule applies even when individual defendants are non-signatories when a plaintiff seeks to recover only loss under a contract. <u>See</u> <u>Sterling Chems.</u>, 259 S.W.3d at 797.  Further, money may be identified only as specific chattel only when it either in the form of specific chattel, such as antique coins, or when it is required and intended to be segregated and maintained in substantially the form in which it was received. <u>Mitchell Energy Corp. v. Samson Res. Co.</u>, 80 F.3d 976, 984 (5th Cir. 1996).

Although Plaintiff argues the investment was designated for the particular purpose of purchasing real property, by necessity this purchase would require co-mingling Plaintiff's investment with other monies.  Because Plaintiff has failed to allege facts supporting a contention that its investment was to be kept segregated in substantially the same form when transferred and

49

because the economic loss rule applies, Plaintiff cannot maintain a claim for conversion of specific chattel.  The court **RECOMMENDS** that Plaintiff's conversion claim be **DISMISSED**.

### 7.  Breach of Contract Against Individual Epicentre Defendants

Defendants Vantage, Delaney, and Botero argue that Plaintiff's breach of contract claim should be dismissed against them because the agreements were made between Plaintiff and EDA.  Plaintiff responds that its claims against individual Epicentre Defendants are proper because it has properly alleged that defendants' corporate forms should be ignored and its breach of contract claims are therefore valid under a piercing of the corporate veil theory.[96]

Generally, individual shareholders are not liable for the debts incurred by a corporation's breach of contract.  See Sid Richardson Carbon & Gasoline Co. v. Interenergy Res., Ltd., 99 F.3d 746, 752 (5th Cir. 1996).  However, Texas courts allow a plaintiff to pierce the corporate veil when defendants "exploit the corporate form as a sham to perpetuate a fraud."  Id.; Willis v. Connelly, 199 S.W.3d 262, 273 (Tex. 2006).  The Texas Business Organizations Code states that the corporate form will not protect defendants who "caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud on the obligee primarily for the

---

[96]     Plaintiff lists the disregard of corporate form as a cause of action in its amended complaint.  Piercing the corporate veil is not an independent cause of action; it is a method to impose liability on shareholders and corporate officers.  See Shandong Yinguang, 607 F.3d at 1035.

direct personal benefit of the holder, beneficial owner, subscriber, or affiliate." Tex. Bus. Orgs. Code Ann. § 21.223(b). To state a claim that a defendant is using a corporation to perpetrate a fraud, a plaintiff must allege sufficient facts that the defendant has committed fraud against the plaintiff. <u>Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter</u>, 607 F.3d 1029, 1035 (5th Cir. 2010).

Plaintiff argues that EDA was organized as a sham to perpetrate a fraud. Specifically, Plaintiff alleges that defendants misled Plaintiff regarding the structure of EDA and that EDA II was formed without its knowledge and without a legitimate purpose in order to hide information from Plaintiff. As discussed supra, Plaintiff has alleged a fraud claim against individual Epicentre Defendants. Plaintiff has therefore properly pleaded a sham to perpetrate a fraud theory of corporate veil-piercing. The court **RECOMMENDS** Epicentre Defendants' Motion to Dismiss Plaintiff's breach of contract claims against individual defendants be **DENIED**.

### 8. Claims Against PLG

PLG argues that Plaintiff fails to establish any claim against it because the actions of Guiduzzi were made either in his individual capacity or as part of F&G. PLG admits that Guiduzzi's use of a PLG email address conferred personal jurisdiction, but argues that Plaintiff has not specifically stated claims against

PLG.

Plaintiff responds that PLG's argument is best left to summary judgment and that Plaintiff has alleged specific fraudulent activity by Guiduzzi along with Guiduzzi's representations of his role within PLG.  Here, Plaintiff has alleged that PLG acted through Guiduzzi by attending meetings, transferring information, and otherwise engaging in the activity the court has found has stated claims against Guiduzzi individually.  The court agrees that PLG's defense that Guiduzzi was not acting on its behalf is not availing at this time.  Accepting Plaintiff's uncontroverted allegations as true and resolving conflicts in its favor, as the court must at the motion to dismiss stage, Plaintiff has stated claims against PLG.  The court accordingly **RECOMMENDS** that PLG's motion to dismiss be **DENIED** at this time.

**C.** **Partial Summary Judgment**

Plaintiff additionally moves for partial summary judgment against EDA for its breach of the July 2011 promissory note. Plaintiff alleges that the note matured on July 27, 2012, and that EDA failed to pay any of the outstanding balance.

EDA does not contest that it was the maker of the promissory note, that it defaulted, or that Plaintiff is entitled to attorneys' fees to collect the note, without waiving its permissive counterclaim and the possibility that the counterclaim could offset its obligations.  Because EDA does not contest Plaintiff's partial

summary judgment motion, the court **RECOMMENDS** that Plaintiff's motion be **GRANTED** as to its breach of contract claim arising out of the July 27, 2012 promissory note.

**D.  Motions for Sanctions**

Finally, Plaintiff has filed a motion for sanctions and Frattini filed a reply and cross-motion for sanctions.

Plaintiff argues that Frattini gave false testimony in a deposition and should be sanctioned by the court.  Specifically, Plaintiff alleges that Frattini testified that he did not know the status of EDA's ownership of the AstroWorld property, that he did not know the status of mortgages made by EDA II, and that he lied regarding the organization of a non-party corporation owned by a trust allegedly controlled by Guiduzzi.

In response, Frattini argues that he did not have actual knowledge of EDA and that he did not lie in his statements regarding the trust, and filed a cross-motion for sanctions based on Rule 11.

Federal courts may use their inherent power to sanction parties and their attorneys when they have practiced fraud on the court.  Boland Marine & Mfg. Co. v. Rihner, 41 F.3d 997, 1005 (5th Cir. 1995).  The primary purpose of sanctions is to deter frivolous litigation and abusive tactics.  Pavelic & LeFlore v. Marvel Entm't Group, 493 U.S. 120, 126 (1989).  The court may impose sanctions when it finds that a party fails to abide by Rule 11(b).  See

53

_Skidmore Energy, Inc. v. KPMG_, 455 F.3d 564, 568 (5th Cir. 2006).

The Supreme Court has stated that perjury occurs when "[a] witness testifying under oath or affirmation . . . gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." _United States v. Dunnigan_, 507 U.S. 87, 113 (1993). Mere inconsistencies or contradictory testimony is not sufficient to establish perjury. See _Koch v. Puckett_, 907 F.2d 524, 531 (5th Cir. 1990).

Here, Plaintiff does not produce specific evidence to establish that Frattini knowingly gave false testimony. Instead, Plaintiff makes statements alleging that it is "inconceivable" that Frattini did not know that his statement was false. Such conclusory statements are not sufficient evidence to prove an absence of confusion, mistake, or faulty memory necessary to establish perjury.

Similarly, Frattini's statement regarding the organization of a trust does not appear to be per se perjury. Frattini stated that he "worked for the beneficiaries" of a trust that owned the company, and that confidentiality prevented him from revealing the identities of the beneficiaries, but that they were not personally connected to him.[97]   Plaintiff argues this is perjury because

---

[97]   See Doc. 191-1, Ex. 1 to Pl.'s Mot. for Sanctions, Depo. of Frattini pp. 22-23.

Frattini did not reveal that Guiduzzi is the "beneficial owner" of the company.  But even if Plaintiff is correct, Frattini's statement that he worked for the beneficiaries and that they were not connected to him has not been proven false as an undisputed matter of law and fact.

Frattini's cross-motion requests Rule 11 sanctions based on Plaintiff's sanctions filing and attempt to use the threat of sanctions as a discovery device.  However, while the court agrees that Plaintiff has failed to prove that Frattini committed perjury, the court does not find that Plaintiff's conduct was sufficient to find that the filing was frivolous as defined by Rule 11(c). Therefore, both Plaintiff and Frattini's Motions for Sanctions are **DENIED**.

## IV.  Conclusion

Based on the foregoing, the court **RECOMMENDS** that Frattini's 12(b)(2) motion be **DENIED**, that Guiduzzi, PLG, F&G, and the Epicentre Defendants's 12(b)(6) motion be **GRANTED IN PART AND DENIED IN PART**, Plaintiff's motion for partial summary judgment be **GRANTED**, and  **ORDERS** that Plaintiff and Frattini's motions for sanctions be **DENIED**.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order

2002-13.  Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically.  Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 12<u>th</u>  day of May, 2016.

_____
U.S. MAGISTRATE JUDGE