IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| B CHOICE LIMITED, | § | |
| *Plaintiff/Counter-defendant,* | § | |
| | § | |
| vs. | § | |
| | § | |
| | § | CIVIL ACTION H-14-2096 |
| EPICENTRE DEVELOPMENT ASSOCIATES, LLC, *et al.* | § | **Judge Gray H. Miller** |
| *Defendants.* | § | |
| _____ | § | Rhonda Moore-Konieczny, |
| | § | Case Manager |
| EPICENTRE DEVELOPMENT ASSOCIATES, LLC, | § | |
| *Counter-plaintiff,* | § | |
| | § | |
| vs. | § | |
| | § | |
| B CHOICE LIMITED, | § | |
| *Counter-defendant.* | § | |

**JURY CHARGE**

## I.    GENERAL INSTRUCTIONS

MEMBERS OF THE JURY:

### A.    Introduction

You have heard the evidence in this case. I will now instruct you on the law that you must apply. It is your duty to follow the law as I give it to you. On the other hand, you the jury are the judges of the facts. Do not consider any statement that I have made in the course of trial or make in these instructions as an indication that I have any opinion about the facts of this case.

After I instruct you on the law, the attorneys will have an opportunity to make their closing arguments. Statements and arguments of the attorneys are not evidence and are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

Do not let bias, prejudice or sympathy play any part in your deliberations. A corporation and all other persons are equal before the law and must be treated as equals in a court of justice.

Answer each question from the facts as you find them. Do not decide who you think should win and then answer the questions accordingly. Your answers and your verdict must be unanimous.

**B.      Burden of Proof**

You must answer most questions from a preponderance of the evidence. By this is meant the greater weight and degree of credible evidence before you. In other words, a preponderance of the evidence just means the amount of evidence that persuades you that a claim is more likely so than not so. In determining whether any fact has been proved by a preponderance of the evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

You must answer some questions, where indicated, based on clear and convincing evidence. Clear and convincing evidence is evidence that produces in your mind a firm belief or conviction as to the truth of the matter sought to be established. It is evidence so clear, direct, weighty and convincing as to enable you to come to a clear conviction without hesitancy.

**C.      Calling Witnesses**

The law does not require any party to call as witnesses all persons who may have been present at any time or place involved in the case, or who may appear to have some knowledge of the matters in issue at this trial. Nor does the law require any party to produce as exhibits all papers and things mentioned in the evidence in the case.

**D.      Objections and Rulings of the Court**

During the course of the trial, you have heard counsel make objections to evidence. It is the duty of the attorneys on each side of a case to object when the other side offers testimony or other evidence which the attorney believes is not properly admissible. You should not draw any inference against an attorney or the attorney's client because that attorney has made an objection.

If I overruled an objection and permitted evidence to be admitted over the objection, my ruling on any objection is not, and should not be considered by you to be, any indication of an opinion by me regarding the weight, effect, or probative value of such evidence. You are the sole judges of the credibility of all witnesses and the weight and effect of the evidence.

If I sustained an objection to a question or to the introduction of other evidence, you must disregard the question entirely and may draw no inference from the wording of the question, nor speculate regarding what the witness might have said if the witness had been permitted to answer or regarding the content of any document not admitted.

**E.      Witness Testimony**

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact, or whether there was evidence that at some other time the witness said or did something, or

2

failed to say or do something, which was different from the testimony the witness gave before you during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people may forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

## F.    Consideration of the Evidence

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony, exhibits, stipulated facts, and judicially noticed facts as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

There are two types of evidence that you may consider in properly finding the truth as to the facts in the case. One is direct evidence—such as testimony of an eyewitness. The other is indirect or circumstantial evidence—the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

## G.    Juror Notes

Any notes that you have taken during this trial are only aids to memory. If your memory should differ from your notes, then you should rely on your memory and not on the notes. The notes are not evidence. A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

## H.    Discontinuance as to Some Parties

Certain parties are no longer involved in this trial. As jurors, it is your duty to consider the issues among the remaining parties.

## I.    Charts and Summaries

Certain charts and summaries have been shown to you solely to help explain or summarize

the facts disclosed by the books, records, and other documents that are in evidence. These charts and summaries are not evidence or proof of any facts. You should determine the facts from the evidence.

## J.      Similar Acts

Evidence that an act was done at one time or on one occasion is not any evidence or proof whatsoever that the act was done in this case.

Then how may you consider evidence of similar acts?

You may consider evidence of similar acts for the limited purpose of showing motive, opportunity, intent, knowledge, plan, identity, or absence of mistake or accident, which are at issue in this case.

Such evidence may not be considered for any other purpose whatsoever. You may not use the evidence to consider or reflect on a Defendant's character.

## K.      Impeachment by Witness's Felony Conviction

In weighing the credibility of Albert Delaney, you may consider the fact that he has previously been convicted of a felony. Such a conviction does not necessarily destroy the witness's credibility, but it is one of the circumstances you may take into account in determining the weight to give to his testimony.

## L.      Deposition Testimony

Certain testimony has been presented to you through a deposition. A deposition is the sworn, recorded answers to questions a witness was asked in advance of the trial. Under some circumstances, if a witness cannot be present to testify from the witness stand, that witness's testimony may be presented, under oath, in the form of a deposition. Some time before this trial, attorneys representing the parties in this case questioned this witness under oath. A court reporter was present and recorded the testimony. The questions and answers have been shown to you by video. This deposition testimony is entitled to the same consideration, and is to be judged by you as to credibility, and weighed and otherwise considered by you in the same way as if the witness had been present and had testified from the witness stand in court.

## M.      Bias—Corporate Party Involved

Do not let bias, prejudice or sympathy play any part in your deliberations. A corporation and all other persons are equal before the law and must be treated as equals in a court of justice.

## N.      Expert Witnesses

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field is permitted to state his or her opinion on those

technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely on it.

## O.  No Inference from Filing Suit

The fact that a person brought a lawsuit and is in court seeking damages creates no inference that the person is entitled to a judgment. Anyone may make a claim and file a lawsuit. The act of making a claim in a lawsuit, by itself, does not in any way tend to establish that claim and is not evidence.

## II.  Nature of the Parties' Claims

B Choice Ltd. ("BCL") brought this action alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), as well as claims for fraud, breach of fiduciary duty, civil conspiracy, and breach of contract arising out of its participation in the attempted purchase and planned development of approximately 104 acres of land, the former site of the "Astro World" theme park. BCL alleges Defendants, alone or in some combination, caused BCL damage by either the loss of its investment, or through un-repaid loans, made in connection with the attempted purchase and development of this land.

EpiCentre Development Associates, LLC and the other EDA defendants (collectively, "EDA") deny BCL's claims. Further, EpiCentre Development Associates, LLC has asserted a counterclaim for breach of contract against BCL, alleging that BCL breached a contract to provide funding for purchase of 90+ acres of the AstroWorld land by an EpiCentre Company, and EDA bears the burden of proof on that claim.

Mr. Guiduzzi, PLG Consulting ("PLG"), and F&G Consultancy ("F&G") deny that they committed any fraud, misrepresentation, or breach of fiduciary duty. BCL (and its beneficial owners) made their own decision whether to invest in the real estate transaction at issue in this case, and no party requested that Guiduzzi (or PLG and F&G) perform any due diligence on the project. Mr. Guiduzzi relied on the EDA defendants for accurate information about the project, and Mr. Guiduzzi truthfully relayed all information about the project to BCL's beneficial owners, through Mr. Frattini. Guiduzzi states that at all times he acted in good faith.

Mr. Frattini denies any decision-making authority or independent knowledge regarding the transaction. At no time did he reach any agreement with any of the other defendants to cause BCL to lose its investment. Rather, according to Frattini, BCL sought to make a real estate investment just prior to the Recession and that is what caused the investment to evaporate.

## A.  Plaintiff's Claim

Plaintiff and EDA bear the burden of proof on their affirmative claims, as you will be instructed on below.

**B.      Defendants' Claims**

Defendants claim that some or all of BCL's claims are barred by the statute of limitations. BCL must prove when it discovered, or should have discovered, in the exercise of reasonable care and diligence, the loss of the initial investment.

Defendants further claim that BCL approved or ratified the conduct and contracts of which BCL now complains.  "Ratification" occurs when a party recognizes the validity of a contract by acting under it, performing under it, or affirmatively acknowledging it.

Guiduzzi states that at all times he acted in good faith. Guiduzzi also claims that he acted honestly and reasonably as a director of BCL and in light of all the circumstances of the case, he ought to be excused from any alleged breaches of fiduciary duty, even if such breaches occurred.

Frattini states that at all times he acted in good faith. He relayed information, as he understood it, to Mr. Robuschi and he repeatedly disclosed that he was not competent to oversee the Astroworld Transaction. At no time did Frattini lie to Mr. Robuschi, Siusi S.p.A. or to BCL. Frattini received information from Mr. Guiduzzi and relayed it to the best of his ability to Mr. Robuschi. Frattini neither intended to, nor did, defraud BCL. Further, BCL, via its owner beneficiary, expressly and/or impliedly ratified his actions.

Each Defendant also claims that BCL and /or the other Defendants are responsible, in whole or in part, for causing or contributing to cause in any way the harm for which BCL seeks the recovery of damages.

**III.     Stipulations**

A "stipulation" is an agreement. When there is no dispute about certain facts, the attorneys may agree or "stipulate" to those facts. You must accept a stipulated fact as evidence and treat that fact as having been proven here in court.  The parties have stipulated to the following facts. This means both sides agree these stipulations are true. You must therefore treat these facts as having been proved, even if no evidence may have been specifically offered regarding them.

1.      On September 4, 2007, Vantage Financial Services was formed in the state of Florida.

2.      Botero was the CEO and Delaney was the COO of Vantage Financial Services.

3.      The relationship between Frattini and Guiduzzi started years before the AstroWorld project began and their collaboration through F&G was part of that relationship.

4.      Guiduzzi served as a director of BCL from July 2008 to June 9, 2009, and from July 4, 2011 to June 2014.

5.      Frattini was the only individual to relay information to Robuschi.

6.     On July 21, 2008, a meeting took place in Parma, Italy to discuss the EpiCentre Houston project.

7.     Frattini, Guiduzzi, Botero and Delaney were present at the July 2008 meeting in Parma.

8.     Botero and Delaney presented an Ownership Grid to Guiduzzi and Frattini that purported to show investment slots for capital contributions in the EpiCentre project.

9.     On August 1, 2008, EDA was formed in the state of Texas.

10.    Botero was the CEO, Delaney was the COO, and Iragorri was the CBDO for EDA.

11.    In late July of 2008, $11,000,000 was sent to the trust account of Liliana Real, a lawyer who represented at least EDA.

12.    On August 12, 2008, Real transferred $10,000,000 of the $11,000,000 to EDA.

13.    EDA used $10,000,000 to acquire a 10% interest in Houston 8th Wonder (H8W), which owned the 104 acres.

14.    $9,200,000 of the $10,000,000 went to Fuller Cyclone, the holder of a second mortgage taken out by H8W, to pay off Fuller Cyclone's lien on the property, and $800,000 went directly to Angel/McIver.

15.    Guiduzzi and Frattini used F&G to invoice Pyle for half of the 2% commission paid to Pyle.

16.    On May 6, 2010, Botero, Delaney, and Iragorri sent a status report stating that EDA will not be a partner with the new landowner.

17.    On September 9, 2010, Guiduzzi stated, "It would be really great if you could state that at today's date no loss of value of the investment occurred."

18.    On May 9, 2011, Guiduzzi asked Frattini for an identical letter on Siusi Letterhead.

19.    On July 28, 2011, BCL agreed to loan EDA $13,650,000 with an unsecured Promissory Note, and the funds are paid to EDA.

20.    A portion of the $13,650,000 was used to buy 11.34 acres of land.

21.    On July 29, 2011, 11.34 acres of the AstroWorld property were conveyed to EDA.

22.    On September 24, 2010, Vantage Plus Corp. was administratively dissolved by the state of Florida.

23.  On January 19, 2012, EDA used the 11.34 acres as collateral for a $1,019,093 loan from NPC II.

24.  On March 19, 2012, EDA used the 11.34 acres as collateral for a $2,550,000 loan from Revere Investments.

25.  On September 28, 2012, Vantage Realty Holdings was administratively dissolved by the state of Florida.

26.  On November 30, 2012, EDA conveyed the 11 acres to EDA II via general warranty deed.

27.  On December 3, 2012, EDA II used the 11.34 acres as collateral for a $4,750,000 loan from NCC.

28.  No money was paid back to BCL as return on investment, or repayment of loans, from the mortgages on the property, or the eventual sale of the property.

29.  On September 27, 2013, Vantage Financial Services was administratively dissolved by the state of Florida.

30.  On May 6, 2014, Guiduzzi requested documents from Delaney for the land EDA owns.


### JURY INSTRUCTION NO. 1
*RICO*
*General instruction on use of the term "racketeering"*

Use of the terms "racketeering," "racketeer," or "corrupt organization" in RICO and during this trial should not be thought of as having anything to do with your determination of whether BCL has established the elements of BCL's claim.


### JURY INSTRUCTION NO. 2
*RICO*
*General instruction on 18 U.S.C. §1962(c) and §1962(d)*

BCL has brought claims against each Defendant except EpiCentre Development Associates, LLC ("EDA") for alleged violations of the Racketeer Influenced and Corrupt Organizations Act, commonly referred to as RICO.  Specifically, BCL claims that each Defendant except EpiCentre Development Associates, LLC, violated Sections 1962(c) and (d) of RICO.

BCL must establish by a preponderance of the evidence every element of a RICO claim. You should consider each and every element of a RICO claim.  You should consider each every element of a RICO cause of action only in the precise way that I will define them in these

instructions. You must avoid confusing any of the elements of a RICO claim with your prior conceptions of the meaning of the terms that are used to describe the elements of a RICO claim.

### JURY INSTRUCTION NO. 3
*RICO*
*Instruction on 18 U.S.C. §1962(c)*
*The Enterprise*

To succeed on this claim, BCL must prove each of the following facts by a preponderance of the evidence:

First, you must find the existence of an enterprise.

Second, you must find that the enterprise engaged in, or had some effect on, interstate or foreign commerce.

Third, you must find that Defendants were employed by or associated with the alleged enterprise.

Fourth, you must find that Defendants participated, either directly or indirectly, in the conduct of the affairs of the enterprise.

Fifth, you must find that Defendants participated through a pattern of racketeering activity.

Now I'll provide you with some additional instructions to apply as you consider the facts that BCL must prove.

For the first element, BCL must prove the existence of an enterprise. An "enterprise" may consist of an individual, partnership, corporation, association, or other legal entity. In this case, the enterprise is alleged to be EpiCentre Development Associates, LLC ("EDA").

An "enterprise" doesn't have to be a legal entity. It can be an association of persons or entities. In this case, BCL also alleges an alternative association in fact enterprise comprised of EDA and EpiCentre Development Associates II, LLC ("EDA II"). The association between the enterprise's members might be loose or informal. But the enterprise must have at least a purpose, relationships among those associated with the enterprise, and a duration sufficient to permit those associates to pursue the enterprise's purpose.

For the second element, BCL must prove that the enterprise engaged in or had an effect on interstate or foreign commerce. "Engage in or have an effect on interstate or foreign commerce" means that the enterprise either engaged in, or had an effect on commerce between two or more states, or on commerce between a state and a foreign country.

For the third element, BCL must prove that Defendants were employed by or associated with the alleged enterprise. The requirement that Defendants be "employed by or associated with" the enterprise means they must have some minimal association with the alleged enterprise. Defendants must know something about the alleged enterprise's activities as they relate to the racketeering activities.

For the fourth element, BCL must also prove by a preponderance of the evidence that Defendants "participated, directly or indirectly, in the conduct of the affairs of the enterprise." To prove this, BCL must show that Defendants actively conducted or participated in conducting the affairs of the alleged enterprise through a pattern of racketeering activity. Defendants don't need to participate in, or be aware of, all of the enterprise's activities. It's sufficient if Defendants conducted or participated in the conduct of some of the enterprise's activities through a pattern of racketeering activity.

For the fifth element, BCL must prove that Defendants participated in the conduct of the enterprise's affairs through a pattern of racketeering activity.

"Racketeering activity" is an act that violates statutes for Mail Fraud under 18 U.S.C. § 1341, Wire Fraud under 18 U.S.C. § 1343, the Travel Act under 18 U.S.C. § 1952, and money laundering under 18 U.S.C. §§1956(a)(1)(A)(i) or (a)(2). I'll explain the law about these statutes to help you determine whether BCL proved by a preponderance of the evidence that Defendants violated any of these statutes. An act of "racketeering activity" is also called a "predicate act."

A "pattern of racketeering activity" means that Defendants committed at least two distinct predicate acts. Distinct does not have to mean different types. But by itself, proof of two or more predicate acts doesn't establish a pattern under RICO.

To prove a pattern of predicate acts, BCL must show that the acts were related to one another and to the enterprise. Two or more acts of racketeering activity that aren't related don't establish a pattern of racketeering activity under RICO. Predicate acts are "related" to one another if they have the same or similar purposes, results, participants, victims, or methods. Predicate acts are also related if they have common distinguishing characteristics and aren't isolated events.

To be related, the predicate acts don't have to be the same kind of acts. For example, the acts may comprise one act of wire fraud and one act of travel act violations.

To make up a pattern of racketeering activity, predicate acts must demonstrate continuity. Continuity can be demonstrated in two basic ways. The first is to demonstrate related predicate acts extending over a substantial period of time. The second is to show conduct that doesn't occur over a substantial period of time but, by its nature, is likely to be repeated into the future.

Again, "racketeering activity" means an act that violates the statutes at issue, Mail Fraud under 18 U.S.C. § 1341, Wire Fraud under 18 U.S.C. § 1343, the Travel Act under 18 U.S.C. § 1952, and money laundering under 18 U.S.C. §§1956(a)(1)(A)(i) or (a)(2). But you can't consider just any racketeering act Defendants allegedly committed in violation of one of these statutes as

bearing on whether Defendants committed two or more predicate acts as a pattern of racketeering activity. To determine if there is a pattern of racketeering activity, you must consider only those specific racketeering acts BCL alleges against Defendants. And you can't find that Defendants engaged in a "pattern of racketeering activity" unless you unanimously agree on which of the alleged predicate acts, if any, make up the pattern.

So it's insufficient if you don't all agree to the finding of what two or more predicate acts Defendants committed. Some of you can't find that the predicate acts are A, B, and C and the rest of you find that the predicate acts are X, Y, and B. Put another way, you can't find that Defendants have engaged in a pattern of racketeering activity unless you find (1) a "pattern" of predicate acts, and (2) that BCL has proved by a preponderance of the evidence that Defendants committed each of the two or more predicate acts that you find make up that pattern.

A person doesn't violate RICO just by associating with or being employed by an otherwise lawful enterprise if others conduct the enterprise's affairs through a pattern of racketeering activity in which the person isn't personally engaged.

If you find that Defendants violated § 1962(c), you must decide whether that violation caused an injury to BCL. The damages that BCL may recover are those caused by the predicate acts constituting the pattern of racketeering activity if they injure BCL, or its business or property. It isn't necessary that every predicate act caused damage to BCL. But it can only recover damages caused by predicate acts that are part of the pattern of racketeering activity.

**JURY INSTRUCTION NO. 4**
*RICO*
*Instruction on finding predicate acts constituting a*
*pattern of racketeering activity, 18 U.S.C. §1962(c)*

BCL has alleged that each defendant has committed two or more predicate acts including violations of Mail Fraud under 18 U.S.C. § 1341, Wire Fraud under 18 U.S.C. § 1343, the Travel Act under 18 U.S.C. § 1952, and money laundering under 18 U.S.C. §§1956(a)(1)(A)(i) or (a)(2). It is your function to decide whether BCL has proved by a preponderance of the evidence as to each Defendant whether that Defendant violated any of these statutes on one or more occasions, if at all.

**JURY INSTRUCTION NO. 5**
*RICO*
*Predicate Act*
*Mail Fraud, 18 U.S.C. § 1341*

Title 18, United States Code, Section 1341, prohibits anyone to use the mails or any private or commercial interstate carrier in carrying out a scheme to defraud.

To establish that a mail fraud predicate act has been committed, BCL must prove each of the following factual elements by a preponderance of the evidence as to each Defendant except EDA:

First: That the Defendant knowingly devised or intended to devise a scheme to defraud BCL in connection with its investment in and loans to EDA related to the AstroWorld investment;

Second: That the scheme to defraud employed false material representations, false material pretenses, or false material promises;

Third: That the Defendants mailed something or caused something to be sent or delivered through the United States Postal Service or a private or commercial interstate carrier for the purpose of executing such scheme or attempting so to do; and

Fourth: That the Defendants acted with a specific intent to defraud.

The word "knowingly," as that term is used from time to time in these instructions, means that the act was done voluntarily and intentionally, not because of mistake or accident.

A "scheme to defraud" means any plan, pattern, or course of action intended to deprive another of money or property.

A "specific intent to defraud" means a conscious, knowing intent to deceive or cheat someone.

A representation, pretense or promise is "false" if it is known to be untrue or is made with reckless indifference as to its truth or falsity. A representation, pretense or promise would also be "false" if it constitutes a half truth, or effectively omits or conceals a material fact, provided it is made with the intent to defraud.

A representation, pretense or promise is "material" if it has a natural tendency to influence, or is capable of influencing, the decision of the person or entity to which it is addressed.

It is not necessary that BCL prove all of the details alleged concerning the precise nature and purpose of the scheme. What must be proved beyond a preponderance of the evidence is that any of the Defendants knowingly devised or intended to devise a scheme to defraud by means of false or fraudulent pretenses, representations, or promises that was substantially the same as the one alleged.

It is also not necessary that BCL prove that the mailed material or material sent by private or commercial interstate carrier was itself false or fraudulent, or that the use of the mail or a private or commercial interstate carrier was intended as the specific or exclusive means of accomplishing the alleged fraud. What must be proved beyond a preponderance of the evidence is that the use of the mails or private or commercial interstate carrier was closely related to the scheme because a Defendant either mailed something or caused it to be mailed, or a Defendant either sent or delivered something or caused it to be sent or delivered by a private or commercial interstate carrier in an attempt to execute or carry out the scheme.

The alleged scheme need not actually have succeeded in defrauding anyone.

To "cause" the mails or private or commercial interstate carrier to be used is to do an act with knowledge that the use of the mails or private or commercial interstate carrier will follow in the ordinary course of business or where such use can reasonably be foreseen even though a Defendant did not intend or request the mails or private or commercial interstate carrier to be used.

Each separate use of the mails or private or commercial interstate carrier in furtherance of a scheme to defraud by means of false or fraudulent pretenses, representations, or promises constitutes a separate act.

Each separate use of the mails in furtherance of a scheme to defraud constitutes a separate instance of mail fraud.

Good faith constitutes a complete defense to mail fraud.  Good faith means the actor had a genuine belief that the information which was sent or given was true.

### JURY INSTRUCTION NO. 6
*RICO*
*Predicate Act*
*Wire Fraud, 18 U.S.C. § 1343*

Title 18, United States Code, Section 1343, prohibits anyone to use interstate or foreign wire communications in carrying out a scheme to defraud.

To establish that a wire fraud predicate act has been committed, BCL must prove each of the following factual elements by a preponderance of the evidence as to each Defendant except EDA:

First: That the Defendant knowingly devised or intended to devise a scheme to defraud BCL in connection with its investment in and loans to EDA related to the AstroWorld investment;

Second: That the scheme to defraud employed false material representations, false material pretenses, or false material promises;

Third: That the Defendant transmitted or caused to be transmitted by way of wire communications, in interstate or foreign commerce, any writing for the purpose of executing such scheme; and

Fourth: That the Defendants acted with a specific intent to defraud.

The word "knowingly," as that term is used from time to time in these instructions, means that the act was done voluntarily and intentionally, not because of mistake or accident.

A "scheme to defraud" means any plan, pattern, or course of action intended to deprive another of money or property.

13

A "specific intent to defraud" means a conscious, knowing intent to deceive or cheat someone.

A representation, pretense or promise is "false" if it is known to be untrue or is made with reckless indifference as to its truth or falsity. A representation, pretense or promise would also be "false" if it constitutes a half truth, or effectively omits or conceals a material fact, provided it is made with the intent to defraud.

A representation, pretense or promise is "material" if it has a natural tendency to influence, or is capable of influencing, the decision of the person or entity to which it is addressed.

It is not necessary that BCL prove all of the details alleged concerning the precise nature and purpose of the scheme. What must be proved beyond a preponderance of the evidence is that any of the Defendants knowingly devised or intended to devise a scheme to defraud by means of false or fraudulent pretenses, representations, or promises that was substantially the same as the one alleged.

It is also not necessary that BCL prove that the material transmitted by wire was itself false or fraudulent, or that the use of the interstate or foreign wire communications facilities was intended as the specific or exclusive means of accomplishing the alleged fraud. What must be proved beyond a preponderance of the evidence is that the use of the interstate or foreign wire communications facilities was closely related to the scheme because a Defendant either wired something or caused it to be mailed, or a Defendant either sent or delivered something or caused it to be wired in interstate or foreign commerce in an attempt to execute or carry out the scheme.

The alleged scheme need not actually have succeeded in defrauding anyone.

To "cause" interstate or foreign wire communications facilities to be used is to do an act with knowledge that the use of the wire communications facilities will follow in the ordinary course of business or where such use can reasonably be foreseen.

Each separate use of the interstate or foreign wire communications facilities in furtherance of a scheme to defraud by means of false or fraudulent pretenses, representations, or promises constitutes a separate act.

Good faith constitutes a complete defense to wire fraud. Good faith means the actor had a genuine belief that the information which was sent or given was true.

## JURY INSTRUCTION NO. 7
*RICO*
*Predicate Act*
*Money Laundering, 18 U.S.C. § 1956(a)(1)*

Title 18, United States Code, Section 1956(a)(1), prohibits anyone to conduct or attempt to conduct a financial transaction with the proceeds of specified unlawful activity, knowing that the property involved represents the proceeds of some form of illegal activity, knowing that the property involved represents the proceeds of some form of unlawful activity with the intent to promote the carrying on of specified unlawful activity, or knowing that the transaction is designed to conceal or disguise the nature, location, source, ownership or control of the proceeds of specified unlawful activity.

To establish a money laundering predicate act under 18 U.S.C. § 1956(a)(1), BCL must prove the following facts by a preponderance of the evidence:

First: That a Defendant knowingly conducted a financial transaction;

Second: That the financial transaction involved the proceeds of a specified unlawful activity, namely any of the RICO predicate acts involved in the scheme alleged here, that is mail fraud, wire fraud, money laundering or travel act violations;

Third: That the Defendant knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity; and

Fourth: That the Defendant intended to promote the carrying on of the specified unlawful activity, or knew that the transaction was designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of the specified unlawful activity.

The word "knowingly," as that term is used from time to time in these instructions, means that the act was done voluntarily and intentionally, not because of mistake or accident.

The term "transaction" includes a purchase, sale, loan, pledge, gift, transfer, delivery or other disposition, or with respect to a financial institution, a deposit, withdrawal, transfer between accounts, exchange of currency, loan, extension of credit, purchase or sale of any stock, bond, certificate of deposit, or other monetary instrument, or any other payment, transfer, or delivery by, through, or to a financial institution, by whatever means effected.

The term "financial transaction" includes any "transaction," as that term has just been defined:

1.      which in any way or degree affects interstate or foreign commerce, involving the movement of funds by wire or other means, one or more monetary instruments, or the transfer of title to any real property, vehicle, vessel, or aircraft; or

2.    which involves the use of a financial institution that is engaged in, or the activities of which affect, interstate or foreign commerce in any way or degree.

The term "monetary instruments" means (i) coin or currency of the United States or of any other country, travelers' checks, personal checks, bank checks, and money orders, or (ii) investment securities or negotiable instruments, in bearer form or otherwise in such form that title thereto passes upon delivery.

The term "financial institution" means any financial institution and any foreign bank.

It is not necessary for BCL to show that a Defendant actually intended or anticipated an effect on interstate commerce by his or its actions or that commerce was actually affected. All that is necessary is that the natural and probable consequence of the acts the Defendant took would be to affect interstate commerce. If you decide that there would be any effect at all on interstate commerce, then that is enough to satisfy this element. The effect can be minimal.

The term "conduct" includes initiating or concluding, or participating in initiating or concluding, a transaction.

The term "proceeds" means any property derived from or obtained or retained, directly or indirectly, through some form of unlawful activity, including the gross receipts of such activity.

### JURY INSTRUCTION NO. 8
*RICO*
*Predicate Act*
*Money Laundering, 18 U.S.C. § 1956(a)(2)*

It's a federal RICO predicate act to knowingly engage in certain kinds of financial transactions commonly known as money laundering.

To establish a money laundering predicate act under 18 U.S.C. § 1956(a)(2), BCL must prove the following facts by a preponderance of the evidence:

First:   a Defendant knowingly transported, transmitted or transferred a monetary instrument or money from a place in the United States to or through a place outside the United States, or to a place in the United States from or through a place outside the United States; and

Second:  a Defendant acted with the intent to promote the carrying on of specified unlawful activity.

The word "knowingly," as that term is used from time to time in these instructions, means that the act was done voluntarily and intentionally, not because of mistake or accident.

16

To "transport, transmit, or transfer" includes all means to carry, send, mail, ship, or move money. It includes any physical means of transferring or transporting funds, and also electronic transfer by wire or computer or other means.

It doesn't matter whether the monetary instrument or money involved in this case was derived from criminal activity. It could be legitimately earned income.

A "monetary instrument" includes the coin or currency of any country, travelers or personal checks, bank checks or money orders, or investment securities or negotiable instruments in a form that allows ownership to transfer on delivery.

The term "specified unlawful activity" means any of the RICO predicate acts involved in the scheme alleged here, that is mail fraud, wire fraud, money laundering or travel act violations. The term "with the intent to promote the carrying on of specified unlawful activity" means that a Defendant must have conducted or attempted to conduct the financial transaction for the purpose of making easier or helping to bring about the "specified unlawful activity" as just defined. To "attempt" an act means to intentionally take some substantial step toward accomplishing the act so that the act will occur unless something happens to interrupt or frustrate it.

## JURY INSTRUCTION NO. 9
### *RICO*
### *Predicate Act*
### *Travel Act, 18 U.S.C. § 1956(a)(2)*

It's a federal RICO predicate act to travel in interstate or foreign commerce in order to carry on certain unlawful activities.

To establish a travel act laundering predicate act under 18 U.S.C. § 1952(a)(3), BCL must prove the following facts by a preponderance of the evidence:

First:  a Defendant traveled in interstate or foreign commerce on or about the dates and between the places alleged;

Second:  a Defendant traveled with the specific intent to promote, manage, establish or carry on an unlawful activity; and

Third:  while traveling, a Defendant knowingly committed an act to promote, manage, establish, or carry on an unlawful activity.

The term "interstate commerce" means travel, transportation, or movement between one state and another state.

The term "foreign commerce" means travel, transportation, or movement between some place within the United States and some place outside the United States.

17

The word "knowingly," as that term is used from time to time in these instructions, means that the act was done voluntarily and intentionally, not because of mistake or accident.

BCL must prove that a Defendant traveled in interstate or foreign commerce and specially intended to promote, manage, establish, or carry on an unlawful activity.  But BCL does not have to prove that the unlawful activity was the only or even primary reason the Defendant traveled.

"Unlawful activity" includes any of the RICO predicate acts involved in the scheme alleged here, that is mail fraud, wire fraud, money laundering or travel act violations

A "business enterprise" is a continuous course of conduct or series of transactions to make a profit, not a casual, sporadic, or isolated activity. For this predicate, the term includes the unlawful activity. It doesn't matter whether the unlawful activity lasted for a particular length of time or was or was not a Defendant's primary occupation. What BCL must prove by a preponderance of the evidence is that a Defendant was involved in a business enterprise, as just defined, rather than casual, sporadic, or isolated activities.

The predicate act is traveling in interstate or foreign commerce with the intent to promote, manage, establish, and carry on an unlawful activity. The statute lists various ways or methods that violate the law. So if you find by a preponderance of the evidence that any one method or way of violating the law occurred, that's sufficient. But you must all agree on the particular way involved.

### JURY INSTRUCTION NO. 10
*RICO*
*Instruction on 18 U.S.C. §1962(d)*
*Conspiracy to violate 18 U.S.C. §1962(c)*

BCL has brought a claim against the Defendants (except for PLG) for allegedly violating the Racketeering Influenced and Corrupt Organization Act, commonly referred to as RICO.

BCL specifically claims that the Defendants (except for PLG Consulting, Ltd.) violated RICO § 1962(d) by conspiring to violate RICO § 1962(c).  I've already given you instructions on the elements of a violation of §1962(c).  Now you must decide if BCL has proved by a preponderance of the evidence whether two or more of the Defendants engaged in a conspiracy to violate RICO § 1962(c).

Generally, a RICO "conspiracy" is an agreement by two or more people to commit an unlawful act.  Put another way, it is a kind of partnership for illegal purposes.  Every member of the conspiracy becomes the agent or partner of every other member.  BCL does not have to prove that all the people named in the complaint were members of the conspiracy—or that those who were members made any kind of formal agreement.  The heart of the conspiracy is the making of the unlawful plan itself.  And BCL does not have to prove that the conspirators were successful in carrying out the plan.

To prove a RICO conspiracy, BCL must prove each of the following three facts by a preponderance of evidence.

First, you must find that two or more people agreed to try to accomplish an unlawful plan to engage in a pattern of racketeering activity.

And second, you must find that a Defendant agreed to the overall objective of the conspiracy.

Or, as an alternative to the second element, you must find that a Defendant agreed with at least one other Defendant to commit two predicate acts as part of the conspiracy.

BCL may show an "agreement to the overall objective of the conspiracy" by circumstantial evidence that a Defendant must have known that others were also conspiring to participate in the same enterprise through a pattern of racketeering. If BCL proves agreement on an overall objective, then it isn't necessary that a Defendant agree to personally commit two predicate acts.

A Defendant can also engage in a RICO conspiracy even if the Defendant didn't agree to the conspiracy's objective. It is enough that the Defendant engaged in a part of the conspiracy with at least one other Defendant by committing at least two predicate acts—alone or with someone else.

While the essence of a RICO conspiracy is an agreement to further an endeavor that, if completed, would satisfy all the elements of a substantive RICO violation, BCL does not have to offer direct evidence of an agreement. The conspiracy's existence can be inferred from the participant's conduct. But a Defendant must objectively manifest, through words or actions, the Defendant's agreement to participate in the enterprise's affairs.

BCL does not have to show that the alleged members of the conspiracy entered into any express or formal agreement, or that they directly stated the details of the scheme, its object, or purpose that was to be accomplished. BCL also does not have to establish that all the means or methods alleged to carry out the alleged conspiracy were, in fact, agreed on, or that the means or methods that were agreed on were actually used or put into operation. And BCL does not have to prove that all persons alleged to be conspiracy members were actually members or that the alleged conspirators succeeded in accomplishing their objectives.

But it isn't enough if the evidence shows only that the alleged conspirators agreed to commit the acts of racketeering BCL alleges, without more, or that they agree to participate in the affairs of the same alleged enterprise. It does not matter that the alleged conspirators participated in the conduct of the affairs of the alleged enterprise through different or dissimilar acts of racketeering activity so long as the alleged racketeering acts would—if actually committed—create a "pattern of racketeering activity" as I've defined it.

A Defendant can become a member of a conspiracy without knowing the names and identities of all the other conspirators. If BCL proves by a preponderance of the evidence that a particular Defendant has knowingly joined the alleged conspiracy, it does not matter that the Defendant may not have participated in the alleged conspiracy or scheme's earlier stages.

Mere presence at the scene of some transaction or event, or mere similarity of conduct among various persons and the fact that they may have associated with each other, and may have assembled together and discussed common aims and interests, does not necessarily prove the existence of a conspiracy. A person who does not have knowledge of a conspiracy, but who happens to act in a way that advances some object or purpose of conspiracy, does not become a conspirator.

BCL does not have to prove that a Defendant committed any of the acts that the Defendant may have agreed to commit to establish the Defendant's membership in the conspiracy.

To determine whether there was a conspiracy, you must consider all the evidence in the case. If you find that there was a conspiracy, then you can attribute the statements or acts of the other co-conspirators to the Defendant. If you find there was not a conspiracy, then you can't attribute the statements or acts of the other co-conspirators to the Defendant.

If you find the conspiracy didn't exist, then you must find for the Defendant. But if you're satisfied that the conspiracy existed, you must determine who the members of the conspiracy were.

If you can find that a particular Defendant is a member of another conspiracy, but not the one BCL claimed was a member, then you can't find that Defendant liable in this case. Put another way, you can't find that a Defendant violated §1962(c) unless you find that the defendant was a member of the conspiracy charged—not some other separate conspiracy.

If you decide that a Defendant conspired to violate RICO, you must decide whether that conspiracy caused BCL injury. The damages BCL may recover are those caused by the predicate acts committed by members of the conspiracy that injured BCL in BCL's business or property.

If you conclude that a Defendant joined in a conspiracy to violate RICO, the Defendant is responsible for all damages caused by predicate acts committed by members of the conspiracy that caused injury to BCL. It isn't necessary that every predicate act caused damage to BCL, but BCL can only recover for damages caused by a predicate act committed by a conspiracy member.

In your consideration of this conspiracy claim, you should first determine whether the alleged conspiracy existed. If you conclude that a conspiracy existed as alleged, you should next determine whether each Defendant under consideration willfully became a member of that conspiracy.

## JURY INSTRUCTION NO. 11
### *RICO*
*Causation and Damage*s

Finally, for BCL to prevail under RICO, it must prove by a preponderance of the evidence that the Defendants' RICO violations where the "proximate cause" of injury to BCL's business or property. Therefore you must find that BCL suffered injury to its business or property and that the injury was caused by reason of the Defendants' violation of RICO.

An injury or damage is proximately caused when the act played a substantial part in bringing about or actually causing injury or damage, and that the injury or damage was either a direct result or a reasonably probably consequence of the act.

A person is injured in his business when he suffers loss of money or profits or a reduction in the value of his business.

A finding that BCL was injured in its business or property because of the Defendants' violation of RICO requires only that you find BCL was harmed by the predicate acts.

However, to find that injury to BCL's business or property was caused by reason of the Defendants' violation of RICO, you must find that the injury to BCL was caused by, and was a direct result of the Defendants' violation of 1962(c).

Therefore, you must find that the commission of the acts of racketeering, or the pattern of racketeering activity, or the conduct of the affairs of the enterprise through the pattern of racketeering activity directly resulted in the injury or played a substantial role in producing the injury.

In considering the issue of damages, if any, with respect to the RICO claims, you must assess the amount you find justified by a preponderance of the evidence as full, just and reasonable compensation for all of the damages to BCL in his business or property.  Damages may not be based on speculation because it is only actual damages (what the law calls compensatory damages) that you are to determine.

You should consider the amount of damages, if any, as to each Defendant with respect to each RICO claim separately and independently from the amount of damages, if any, with respect to the other, non-RICO claims.  For example, and by way of example only, if you determine that damages should be awarded to BCL for its RICO claim, you should award full, just and reasonable compensation for damages under the RICO claim, without regard to the damages, if any, you might award under any other claim brought by BCL.

The fact I have given you instructions concerning the issue of BCL's damages should not be interpreted in any way as an indication that I believe that BCL should or should not prevail in this case. The questions which you will answer contain several questions about damages under different laws and different theories of recovery.  You should not draw any inference form the fact that a damages question has been asked.  You must answer each question separately and award damages, if appropriate, independently of damages which you may award under any other question.

## JURY INSTRUCTION NO. 12
### Common Law Fraud

A party commits fraud when:

1. a party makes a material misrepresentation, and

2. the misrepresentation is made with knowledge of its falsity or made recklessly without any knowledge of the truth and as a positive assertion, and

3. the misrepresentation is made with the intention that it should be acted on by the other party, and

4. the other party relies on the misrepresentation and thereby suffers injury.

A promise to do an act in the future is actionable fraud if that promise is made with the intention, design and purpose of deceiving, and with no intention of performing the act. While a party's intent is determined by the time the party made the representation, it may be inferred from the party's subsequent acts after the representation is made.

Because intent is inherently undiscoverable, intent must always be established by circumstantial evidence. Motive, past conduct, and related wrongful acts are factors to be considered.

A fact is "material" if it is important to the plaintiff in making a decision – that is if a reasonable person would attach importance to and be induced to act on the information in determining a course of action in the transaction.

"Misrepresentation" means a:

1. a false statement of fact, or,

2. a promise of future performance made with an intent, at the time the promise was made, not to perform as promised, or

3. an expression of opinion that is false, made by one claiming or implying to have special knowledge of the subject matter of the opinion.

"Special knowledge" means knowledge or information superior to that possessed by the other party and to which the other party did not have equal access.

Fraud requires that BCL show actual and justifiable reliance. Justifiability is measured given the BCL's individual characteristics, abilities, and appreciation of facts and circumstances at or before the time of the alleged fraud. An action for fraud depends upon whether the contract would have been made notwithstanding the representations.

## JURY INSTRUCTION NO. 13
*Common Law Fraud*
*Damages*

Out-of-pocket damages are sometimes referred to as "reliance" damages. These are damages that reimburse the plaintiff for expenditures made toward execution of the contract, in order to restore the status quo before the contract. The out-of-pocket measure allows the injured party to recover the actual injury suffered measured by the difference between the value paid and the value received.

## JURY INSTRUCTION NO. 14
*Fraud by Nondisclosure*

A party commits fraud by nondisclosure when:

1. a party fails to disclose a material fact within the knowledge of that party, and,

2. the party knows that the other party is ignorant of the fact and does not have an equal opportunity to discover the truth, and

3. the party intends to induce the other party to take some action by failing to disclose the fact, and

4. the other party suffers injury as a result of acting without knowledge of the undisclosed fact.

Circumstantial evidence must usually be used to determine if a Defendant was deliberately silent when he had a duty to speak, because deliberateness requires a Defendant's hidden purposes to be determined. Motive, past conduct, and related wrongful acts are factors to be considered.

A fact is "material" if it is important to BCL in making a decision – that is if a reasonable person would attach importance to and be induced to act on the information in determining a course of action in the transaction.

BCL alleges that Defendant(s) failed to disclose to it that: (1) at the time of the initial investment, the investment was not 90% subscribed; (2) at the time of the initial investment EDA did not own any portion of the AstroWorld Property; (3) BCL's initial $11,000,000 investment had been lost; and (4) that the 11.34 acre parcel had been sold to Kirby at West Belfort.

## JURY INSTRUCTION NO. 15
*Statutory Fraud*
*Factual Misrepresentation*

Statutory fraud occurs when:

1.  there was a transaction involving  stock;

2.  there is a false representation of a past or existing material fact, and

3.  the false representation is made to a person for the purpose of inducing that person to enter into a contract, and

4.  the false representation is relied on by that person in entering into that contract.

Plaintiff BCL alleges that Defendants (except for PLG, F&G, Frattini, and Guiduzzi), committed statutory fraud only with respect to BCL's $11,000,000 investment in EDA pursuant to the Subscription Agreement in 2008.  There is no allegation of statutory fraud with respect to any promissory note.

## JURY INSTRUCTION NO. 16
*Statutory Fraud*
*False Promise*

Statutory fraud can also occur in a transaction involving stock when:

1.  a party makes a false promise to do an act; and

2.  the promise is material, and

3.  the promise is made with the intention of not fulfilling it, and

4.  the promise is made to a person for the purpose of inducing that person to enter into a contract, and

5.  that person relies on the promise in entering into that contract.

Plaintiff BCL alleges that Defendants (except for PLG, F&G, Frattini, and Guiduzzi) committed statutory fraud only with respect to BCL's $11,000,000 investment in EDA pursuant to the Subscription Agreement in 2008.  There is no allegation of statutory fraud with respect to any promissory note.

## JURY INSTRUCTION NO. 17
### *Ratification*

Defendants assert that BCL's fraud and breach of fiduciary duty claims are barred by the defense of ratification.  "Ratification" occurs when a party recognizes the validity of a contract by acting under it, performing under it, or affirmatively acknowledging it.

Ratification may be express or implied.

The elements of express ratification are:  1) approval by act, word, or conduct; 2) with full knowledge of the facts of a prior act; and 3) with intention of giving validity to the prior act.  In order to find express ratification, you must find Defendants proved by a preponderance of the evidence that BCL acted upon full knowledge of all material facts.

Implied ratification occurs if a party, though he may have been unaware of unauthorized conduct taken on his behalf at the time it occurred, retains the benefits of the transaction involving the unauthorized conduct after he acquired full knowledge of the unauthorized conduct.  Implied ratification results in the ratification of the entire transaction.

## JURY INSTRUCTION NO. 18
### *Breach of Fiduciary Duty*
### *Guiduzzi*

As a Director of BCL, Guiduzzi owed BCL a formal fiduciary duty. This fiduciary relationship consisted of the duty of loyalty and utmost good faith; the duty of candor; the duty to act with integrity of the strictest kind; the duty of fair, honest dealing; and the duty of full disclosure.

To prove Guiduzzi failed to comply with his fiduciary duty, BCL must show:

1. The transactions in question were not fair and equitable to BCL; or

2. Guiduzzi did not make reasonable use of the confidence that BCL placed in him; or

3. Guiduzzi failed to act in the utmost good faith or exercise the most scrupulous honesty toward BCL; or

4. Guiduzzi placed his own interests before BCL's, used the advantage of his position to gain a benefit for himself at the expense of BCL, or placed himself in a position where his self-interest might conflict with his obligations as a fiduciary; or

5. Guiduzzi failed to fully and fairly disclose all important information to BCL concerning the transactions.

## JURY INSTRUCTION NO. 19
*Existence of Fiduciary Duty*
*Frattini*

A relationship of trust and confidence existed if BCL justifiably placed trust and confidence in Frattini to act in BCL's best interest. BCL's subjective trust and feelings alone do not justify transforming arm's-length dealings into a relationship of trust and confidence.

Confidential relationships may arise when the parties have dealt with each other in such a manner for a long period of time that one party is justified in expecting the other to act in its best interest. Such informal fiduciary relationships may arise when one person trusts and relies upon another, whether the relationship is moral, social, domestic, or merely personal.

Generally, while a fiduciary relationship or confidential relationship may arise from the circumstances of a particular case, to impose such a relationship in a business transaction, the relationship must exist prior to, and apart from the agreement made the basis of the suit. This means that you will need to find that Frattini maintained some relationship with BCL before entering into the EpiCentre transactions at issue.

## JURY INSTRUCTION NO. 20
*Breach of Fiduciary Duty*
*Frattini*

If you find a relationship of trust and confidence existed between Frattini and BCL, Frattini owed BCL a fiduciary duty. This fiduciary relationship consisted of the duty of loyalty and utmost good faith; the duty of candor; the duty to act with integrity of the strictest kind; the duty of fair, honest dealing; and the duty of full disclosure.

To prove he complied with his duty, Frattini must show:

1.     the transactions in questions were fair and equitable to BCL; and

2.     Frattini made reasonable use of the confidence that BCL placed in him; and

3.     Frattini acted in the utmost good faith and exercised the most scrupulous honesty toward BCL; and

4.     Frattini placed the interests of BCL before his own and did not use the advantage of his position to gain any benefit for himself at the expense of BCL; and

5.     Frattini fully and fairly disclosed all important information to BCL concerning the transactions.

## JURY INSTRUCTION NO. 21
*Existence of Fiduciary Duty*
*EDA Officers*

A relationship of trust and confidence existed if BCL justifiably placed trust and confidence in any of the EDA Officers to act in BCL's best interest. BCL's subjective trust and feelings alone do not justify transforming arm's-length dealings into a relationship of trust and confidence.

A corporate officer does not occupy a fiduciary relationship with an individual shareholder unless created by contract in addition to the corporate relationship.

## JURY INSTRUCTION NO. 22
*Breach of Fiduciary Duty*
*EDA Officers*
*Omar Botero*

If you find a relationship of trust and confidence existed between Botero and BCL, Botero owed BCL a fiduciary duty. This fiduciary relationship consisted of the duty of loyalty and utmost good faith; the duty of candor; the duty to act with integrity of the strictest kind; the duty of fair, honest dealing; and the duty of full disclosure.

To prove he complied with his duty, Botero must show:

1.      the transactions in questions were fair and equitable to BCL; and

2.      Botero made reasonable use of the confidence that BCL placed in him; and

3.      Botero acted in the utmost good faith and exercised the most scrupulous honesty toward BCL; and

4.      Botero placed the interests of BCL before his own and did not use the advantage of his position to gain any benefit for himself at the expense of BCL; and

5.      Botero fully and fairly disclosed all important information to BCL concerning the transactions.

## JURY INSTRUCTION NO. 23
*Breach of fiduciary duty*
*EDA Officer*
*Albert Delaney*

If you find a relationship of trust and confidence existed between Delaney and BCL, Delaney owed BCL a fiduciary duty. This fiduciary relationship consisted of the duty of loyalty and utmost

good faith; the duty of candor; the duty to act with integrity of the strictest kind; the duty of fair, honest dealing; and the duty of full disclosure.

To prove he complied with his duty, Albert Delaney must show:

1.  the transactions in questions were fair and equitable to BCL; and

2.  Delaney made reasonable use of the confidence that BCL placed in him; and

3.  Delaney acted in the utmost good faith and exercised the most scrupulous honesty toward BCL; and

4.  Delaney placed the interests of BCL before his own and did not use the advantage of his position to gain any benefit for himself at the expense of BCL; and

5.  Delaney fully and fairly disclosed all important information to BCL concerning the transactions.

## JURY INSTRUCTION NO. 24
*Breach of Contract against EDA*
*Capital Subscription Agreement*

The Capital Subscription Agreement was entered on July 23, 2008, with BCL and EDA, by its manager Vantage Financial, by its manager Vantage Plus, by its CEO Botero.

At issue in this contract is whether or not the Defendants breached the terms of the agreement which stated that:

> "funds required by this Agreement are paid by the Subscriber [BCL] and are fully collected and the Company [EDA, acting by Vantage Plus] accepts this subscription for the purpose of acquiring title to the real estate formerly known as AstroWorld and to be known as EpiCentre Houston, a 104.19 acre assemblage of land located at 9001 Kirby Drive, Houston, TX, (the "Real Estate") is acquired by the Company."

## JURY INSTRUCTION NO. 25
*Statute of Limitations*
*Initial Investment*

Defendants claim that some or all of BCL's claims are barred by the statute of limitations. BCL must prove when it discovered, or should have discovered, in the exercise of reasonable care and diligence, the loss of the initial investment.

Generally, the knowledge acquired by a corporate agent while acting in furtherance of the corporate business or in the course of his employment will be imputed to the corporation. However, the imputation of knowledge of a corporate representative or agent to a corporation is not absolute.

The rule of imputation under Texas law does not protect those who collude with the agent to defraud the principal. So when an agent is acting fraudulently toward his principal, the agent's knowledge is not binding on the principal and one who avails himself of the fraudulent services of the agent cannot claim that the agent's acts or knowledge bind the defrauded principal.

You may also consider whether a defendant's fraudulent concealment of wrongdoing may toll the statute of limitations after the cause of action accrues.  A party asserting fraudulent concealment must establish an underlying wrong, and that the defendant actually knew the plaintiff was in fact wronged, and concealed that fact to deceive the plaintiff.  Fraudulent concealment only tolls the running of limitations until the fraud is discovered or could have been discovered with reasonable diligence.

**JURY INSTRUCTION NO. 26**
*Breach of Contract against EDA*
*Capital Subscription Agreement*
*Damages*

If you find that EDA breached the Capital Subscription Agreement with BCL, BCL is entitled to recover damages. There are different types of damages that you can award for a breach of contract claim. The ultimate goal in measuring damages for a breach-of-contract claim is to provide just compensation for any loss or damage actually sustained as a result of the breach.

The first type of damages are for what's called an "expectation interest" or "benefit of the bargain measure." A plaintiff can recover expectation damages that give the plaintiff the benefit of its bargain by putting it in as good a position as it would have been in if the contract had been performed.

If the expectation interest damages are too speculative or uncertain, the plaintiff is often awarded "reliance damages." Reliance damages allow a plaintiff to recover reliance-interest damages to restore any expenditures the plaintiff made in reliance on the contract.

A plaintiff cannot be awarded both expectation and reliance damages.

A plaintiff can also be awarded "restitution damages." Restitution damages restore property or money taken from the plaintiff by the defendant and attempt to put the plaintiff in as good as a position it would have been in if no contract had been made.

## JURY INSTRUCTION NO. 27
*Breach of Contract against EDA*
*2011 Promissory Note*

The Court has previously found EDA failed to pay when due any of the outstanding balance of the 2011 promissory note.  You will only decide what damages, if any, BCL is entitled to recover from any of the Defendants.

## JURY INSTRUCTION NO. 28
*Breach of Contract*
*Memorandum of Agreement*
*EDA Counterclaim*

The September 2012 Memorandum of Agreement was entered into by EDA, by its CEO, with BCL, by Guiduzzi. This breach of contract claim is a counter-claim by EDA.

In deciding whether the parties reached an agreement, you may consider what they said and did in light of the surrounding circumstances, including any earlier course of dealing. You may not consider the parties' unexpressed thoughts or intentions.

A party's conduct includes the conduct of another who acts with the party's authority or apparent authority. Authority for another to act for a party must arise from the party's agreement that the other act on behalf and for the benefit of the party. If a party so authorizes another to perform an act, that other party is also authorized to do whatever else is proper, usual, and necessary to perform the act expressly authorized.

Apparent authority exists if a party (1) knowingly permits another to hold himself out as having authority or, (2) through lack of ordinary care, bestows on another such indications of authority that lead a reasonably prudent person to rely on the apparent existence of authority to his detriment. Only the acts of the party sought to be charged with responsibility for the conduct of another may be considered in determining whether apparent authority exists.

## JURY INSTRUCTION NO. 29
*Disregarding the Corporate Form*
*EDA Officers*

The law allows for liability to be imposed on a defendant for certain acts of a corporation under different theories for disregarding the corporate form. This is commonly referred to as "piercing the corporate veil." Piercing the corporate veil is not a cause of action – it is simply a means of holding an individual liable for a cause of action that otherwise would have been brought against the corporation.

## JURY INSTRUCTION NO. 30
*Disregarding the Corporate Form*
*Alter Ego Doctrine*
*EDA Officers*

One way to pierce the corporate veil is to show that the corporation was organized and operated as a mere tool or business conduit of another. This theory is also known as the "alter ego doctrine."

Under this doctrine, the EDA officers are responsible for the conduct of a corporate entity if the corporate entity was organized and operated as a mere tool or business conduit of the EDA officers; there was such unity between the corporate entity and the EDA officers that the separateness of the corporate entity had ceased and holding only the corporate entity responsible would result in injustice; and the EDA officers caused the corporate entity to be used for the purpose of perpetrating and did perpetrate an actual fraud on BCL primarily for the direct personal benefit of the EDA officers.

In deciding whether there was such unity between the corporate entity and the EDA officers that the separateness of the corporate entity had ceased, you are to consider the total dealings of the corporate entity and the EDA officers, including-

1.    the degree to which the corporate entities' property had been kept separate from that of the EDA officers;

2.    the amount of financial interest, ownership, and control the EDA officers maintained over the corporate entity; and

3.    whether the corporate entity had been used for personal purposes of the EDA officers.

## JURY INSTRUCTION NO. 31
*Perpetrating fraud*

In order to prove that a holder of shares of a corporation is personally liable for contractual obligations of the corporation, the evidence must also show that the shareholder caused the corporation to be used for the purpose of perpetrating and did perpetuate an actual fraud on the obligee primarily for the direct personal benefit of the shareholder.

Actual fraud is defined as conduct that usually involves dishonesty of purpose or intent to deceive.

31

## JURY INSTRUCTION NO. 32
*Perpetrating fraud*
Botero and Delaney

BCL claims that Botero or Delaney are "responsible" for the conduct of the entities set forth below.

EpiCentre Development Associates, LLC

EpiCentre Development Associates II, LLC

Alianza Financial Services, LLC

Alianza Holdings, LLC

Vanguard Equity Holdings, LLC

Vantage Equity Holdings, LLC

Vantage Financial Services, LLC

Vantage Plus Corp.

Vantage Plus Development Company, LLC

Vantage Realty Holdings VI-X, LLC

To find that Delaney or Botero are "responsible" for the conduct of any of those entities, you must find by a preponderance of the evidence that:

(1) Any or all of the entities were organized and operated as a mere tool or business conduit of Botero or Delaney; there was such unity between any or all of the entities and Botero or Delaney that the separateness of any or all of the entities had ceased and holding only the entities responsible would result in injustice; and Botero or Delaney caused any or all of the entities to be used for the purpose of perpetrating and did perpetrate an actual fraud on BCL primarily for the direct personal benefit of Botero or Delaney.

In deciding whether there was such unity between any or all of the entities and Botero or Delaney that the separateness of any or all of the entities had ceased, you are to consider the total dealings of those entities and Botero or Delaney including—

the degree to which the property of the entities had been kept separate from that of Botero or Delaney;

the amount of financial interest, ownership, and control Botero or Delaney maintained over the entities; and

whether the entities had been used for personal purposes of Botero or Delaney.

OR

(2) Botero or Delaney used any or all of the entities for the purpose of perpetrating and did perpetrate an actual fraud on BCL primarily for the direct personal benefit of Botero or Delaney.

**JURY INSTRUCTION NO. 33**
*Perpetrating fraud*
*Frattini and Guiduzzi*

BCL claims that Frattini or Guiduzzi are "responsible" for the conduct of F&G Consultancy Ltd. To find that Frattini or Guiduzzi are "responsible" for the conduct of F&G Consultancy Ltd., you must find by a preponderance of the evidence that Frattini or Guiduzzi used F&G Consultancy for the purpose of perpetrating and did perpetrate an actual fraud on BCL primarily for the direct personal benefit of Frattini or Guiduzzi.

**JURY INSTRUCTION NO. 34**
*Conspiracy*

To be part of a conspiracy, the Defendant listed below and another person or persons must have had knowledge of, agreed to, and intended a common objective or course of action that resulted in the damages to BCL. One or more persons involved in the conspiracy must have performed some act or acts to further the conspiracy.

Intent can be proven by circumstantial evidence and reasonable inference. It is not essential that each conspirator have knowledge of all of the details of the conspiracy and the conspiracy agreement does not have to be formal -- the understanding may be a tacit one.

To be liable for conspiracy, a party must be shown to have intended to do more than engage in the conduct that resulted in the injury. It must be shown that from the inception of the combination or agreement the party intended to cause the injury or was aware of the harm likely to result from the wrongful conduct. Thus, a party must be shown to have known the object and purpose of the conspiracy and to have had a meeting of the minds with the other conspirators to accomplish that object and purpose, intending to bring about the resulting injury.

Andrea Frattini

Pierluigi Guiduzzi

Omar Botero

Albert Delaney

## IV.    Instructions on Damages

### A.    Introduction

I am turning now to the question of damages and what can be considered in determining an award of money in this case. By including damages in these instructions, I do not wish to suggest or imply anything about the issue of liability or about whether or not any damages have been proved in this case.

Two kinds of damages can be considered in this case. They are compensatory damages and punitive (also called exemplary) damages. Compensatory damages will consist of BCL's direct economic losses resulting from the Defendants' conduct, if any. In other words, the Defendants are liable for all damages suffered by BCL that were proximately caused by the Defendants' conduct. "Exemplary damages" means an amount that you may in your discretion award as a penalty or by way of punishment.  Factors to consider in awarding exemplary damages, if any, are:

1.  The nature of the wrong.

2.  The character of the conduct involved.

3.  The degree of culpability of the defendant.

4.  The situation and sensibilities of the parties concerned.

5.  The extent to which such conduct offends a public sense of justice and propriety.

6.  The net worth of the defendant.

"Proximate cause" means a cause that was a substantial factor in bringing about an event, and without which cause such event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using the degree of care required of him would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event.

Punitive or exemplary damages will consist of the amount awarded by you, not as compensation to BCL for wrong done, but as punishment to the Defendants and as a deterrent to others.

You shall not award any sum of money on any element if you have otherwise, under some other element, awarded a sum of money for the same loss. That is, do not compensate twice for the same loss, if any.

Do not increase or reduce the amount in one answer because of your answer to any other question about damages.

Do not speculate about what any party's ultimate recovery may or may not be. Any recovery will be determined by the court when it applies the law to your answers at the time of judgment.

Do not add any amount for interest on damages, if any.

Do not include in your answer any amount that you find BCL could have avoided by the exercise of reasonable care.

## B.  Calculating Damages

If you find that BCL has in fact suffered damage to its business or property, the fact that the precise amount of damage may be difficult to ascertain does not impair the right to recover damages. Although you may not render a verdict based upon mere speculation or guesswork, BCL is allowed some reasonable leeway in its method and proof of damage. While the law places a burden upon BCL to prove such facts as will enable you, the jury, to arrive at the amount of damages with reasonable certainty, it is not necessary that BCL prove the amount of those damages with mathematical precision. It is only required that BCL present such evidence as might reasonably be expected to be available under the circumstances.

If you find that EDA has in fact suffered damage on its counterclaim, it is claiming "lost profit claimed in the past." Loss of contractual profit is the difference between the agreed price and the cost EDA would have made selling "Astro-World" Property.

## C.  Cautionary Instruction on Damages

You should not interpret the fact that I have given instructions about BCL's damages as an indication in any way that I believe BCL should, or should not, win this case. It is your task first to decide whether the Defendants are liable. I am instructing you on damages only so that you will have guidance in the event you decide that any Defendant is liable and that BCL is entitled to recover money from any of the Defendants.

## V.  Instructions on Deliberations

It is your sworn duty as jurors to discuss the case with one another in an effort to reach agreement if you can do so. Each of you must decide the case for yourself, but only after full consideration of the evidence with the other members of the jury. While you are discussing the case, do not hesitate to re-examine your own opinion and change your mind if you become convinced that you are wrong. However, do not give up your honest beliefs solely because the others think differently, or merely to finish the case.

Remember that in a very real way you are judges—judges of the facts. Your only interest is to seek the truth from the evidence in the case.

As judges of the facts, you must decide this case based solely on evidence presented here within the four walls of this courtroom. This means that during deliberations you must not conduct any independent research about this case, the topics involved in the case, or the individuals or corporations mentioned. In other words, you are prohibited from consulting dictionaries or reference materials; searching the internet, web sites, or blogs; or using any other electronic tools to obtain information to help you decide the case.

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You may not use any electronic device or media, such as telephone, cell phone, smart phone, iPhone, Blackberry, or computer. You may not use the internet, or internet service, or any text or instant messaging service, nor communicate or use in any way any internet chat room, blog, or website such as Facebook, MySpace, LinkedIn, YouTube, or Twitter, to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict. In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case. You can only discuss the case in the jury room with your fellow jurors during deliberations. I expect you will inform me as soon as you become aware of another juror's violation of these instructions.

You may not use these electronic means to investigate or communicate about the case because it is important that you decide this case based solely on the evidence presented in this courtroom. Information on the internet or available through social media might be wrong, incomplete, or inaccurate. You are only permitted to discuss the case with your fellow jurors during deliberations because they have seen and heard the same evidence you have. In our judicial system, it is important that you are not influenced by anything or anyone outside of this courtroom. Otherwise, your decision may be based on information known only by you and not your fellow jurors or the parties in the case. This would unfairly and adversely impact the judicial process.

When you retire to the jury room to deliberate on your verdict, you may take this charge with you as well as exhibits which the court has admitted into evidence. Select your Foreperson and conduct your deliberations. If you recess during your deliberations, follow all of the instructions that the court has given you regarding your conduct during the trial. After you have reached your unanimous verdict, your Foreperson is to fill in on the form your answers to the questions. Do not reveal your answers until such time as you are discharged, unless otherwise directed by me. You must never disclose to anyone, not even to me, your numerical division on any question.

If you want to communicate with me at any time, please give a written message or question to the marshal, who will bring it to me. I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally. I will always first disclose to the attorneys your question and my response before I answer your question.

After you have reached a verdict, you may, but are not required to, talk with anyone about the case unless the court orders otherwise.

Signed in Houston, Texas on June 26, 2017.

Gray H. Miller
United States District Judge

37